## ROBERT T. ZIEHM *vs.* THE UNITED ELECTRIC LIGHT AND POWER CO.

*Injury to Lineman from Contact with Charged Wire—Defective Insulation—Contributory Negligence—Evidence.*

The wires of an electric light company were strung a few inches from a distributing pole of a telephone company.   Plaintiff, an employee of the latter company, had occasion in the course of his work, to climb up the telephone pole by means of spikes inserted in it.   In descending his left hand came in contact with one of the electric light wires which was charged with more than 2,000 volts of electricity and he received a shock which caused him to fall to the ground.   In an action against the electric light company to recover damages for the injury there was evidence that the defendant's wires were not properly placed and were not properly insulated; that the wire which touched the plaintiff was either swung by the wind or caused to vibrate by an approaching trolley car, and that the plaintiff could not have discovered the defective insulation of the wire as he climbed up the pole.   *Held*, that the question whether the plaintiff was guilty of contributory negligence or not was for the jury and it was error to instruct them that the plaintiff was guilty of such negligence as matter of law.

When it is alleged in an action against an electric light company that its wires were not properly placed at a certain point and an injury was thereby occasioned, evidence is not admissible to show that after the accident the location of the wires was changed.

In an action against an electric company when it is alleged that the injury complained of was caused by the defective insulation of its wires, evidence as to the kind of insulation used by other companies is not admissible unless a proper foundation has been laid for such evidence.

*Decided June 16th, 1906.*

Appeal from Baltimore City Court (WRIGHT, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER, JONES and BURKE, JJ.

*Thomas G. Hayes* (with whom was *David Ash* on the brief), for the appellant.

1. *Negligence of the appellee.*    While the granted prayer took the case from the jury solely because of the contributory negligence of the appellant, yet it is proper and necessary to consider the negligence of the appellee, because the question of the contributory negligence *vel non* of the appellant may depend and be connected with the duty and obligation, under the circumstances, of the appellee to the appellant.    *B. & O. R. Co.* v. *Hauer,* 60 Md. 462.    The specific duties due from appellee to appellant were :

(*a*) The duty and obligation of the appellee due and owing to the appellant, was to know that the distributing pole in question with its steps running from the ground to the cable box at the top, a distance of 50 feet, was liable to constant and frequent use by the appellant and other linemen of the Maryland Telephone Company whose pole it was, in the discharge of their duties as linemen, and it was the imperative duty and obligation of the appellee to see to it that its high-tension wires carrying 2,080 volts of electricity, which were in close proximity to the pole and its steps, were properly placed and insulated.    *Heaven* v. *Pender,* 11 Q. B. Div. 503; *Ennis* v. *Gray,* 87 Hun. 356, 34 N. Y. Sup. 379; *Brown* v. *Edison Electric Co.,* 90 Md. 400.

(*b*) The degree of care required of the appellee in the placing and insulation of it high-tension wires, where linemen in pursuit of their calling or business were likely to constantly and frequently come in close proximity to them, was the highest degree of care and diligence practicable under the circumstances.    *Croswell on Elec.,* sec. 234, p. 205; 15 *Cyc.* 473; *Ahern* v. *Oregon Tel. Co.* (Or.) 35 Pac. Rep. 545; *Giraudi* v. *Electric Imp. Co.* (Cal.) 28 L. R. A. 599; *Perham* v. *Portland Gen. Elec. Co.* (Or.) 53 Pac. Rep. 14.

(*c*) Another fact which the evidence in the record clearly

discloses is that this deadly and dangerous wire of the appellee next to the pole and steps was originally attached to a bracket, this wire when so attached to this bracket was stationary and could not sway.   The appellee permitted, through its negligence, this wire to become detached from this bracket and necessarily liable by the wind and other causes to sway and strike the pole within two inches of one of the steps.   This swaying doubtless against the pole caused the insulation to be rubbed or worn off.   If the appellee had performed its duty and kept this wire attached to the bracket, this wire could not have swayed and struck the hand of appellant and injured him as he was descending the pole and just as his hand had left the step and was passing this wire.   One of the proximate causes of the injury inflicted on the appellant was the negligence of the appellee in permitting this high-tension wire to become detached from this bracket.

(*d*) Another unlawful act of the appellee was stringing its high-tension wires along the Reisterstown Turnpike.   The appellee was on this turnpike with those high-tension wires unlawfully and as a trespasser.   It had neither leave nor license from the turnpike company or any body else to string these high-tension wires where they were.   While the Maryland Telephone Company had the contractual right to be there and to erect and maintain the poles and have the appellant and its other linemen ascend and descend this distributing pole whenever duty required.

(*e*) The insulation on this wire which swayed and struck the hand of the appellant and injured him, was shown to be of an inferior quality and liable to rot and fall off as a result of exposure to the weather.   The length of the worn off insulation when examined two hours after the accident was from an inch and a-half to two inches in length.

2. *Contributory negligence of appellant.*   Considering now the conduct and action of the appellant in descending this distributing pole, in the light of the duty and obligation as above given of the appellee to him under the circumstances of this case;

(*a*) A fundamental rule of law relating to contributory negligence is that no Court is justified in holding as a matter of law that the injured party was guilty of contributory negligence, unless there is some prominent and decisive act in regard to which there is no room for ordinary minds to differ. *Winkelman* v. *Colladay*, 88 Md. 78; *Straus* v. *United R. Co.*, 101 Md. 499.

The Supreme Court of the United States thus expresses this rule of law:

"Were the undisputed facts as thus corrected of such a nature as to compel every reasonable mind to draw the inference that plaintiff had been guilty of contributory negligence? *Mosheuvel* v. *District of Columbia*, 191 U. S. 254.

(*b*) Another fundamental, as well as elementary rule of law applicable to contributory negligence is, that the injured person is never required to look for danger which he had no reasonable cause to apprehend.    1 *Shearm. & Redf. Neg.*, sec. 90, p. 135; *7 A. & E. Ency. Law*, 392; *Beach, Contributory Neg.*, p. 41; *Peoples Bank* v. *Morgolofski*, 75 Md. 444.

Test the conduct of the appellant by this rule.    He had passed through these high-tension wires in ascending the pole and the insulation at which he looked appeared perfect in so far as he could tell.    The wire was not swaying as he passed it going up and why, when descending at a great height above the ground, encumbered with his tool box swung over his shoulder, should he either look for or apprehend a defect in the insulation and a sudden sway of the wire as his left hand passed it, going from one step to another?

(*c*) The appellant was not required to anticipate the negligence of the appellee in leaving a wire of high and dangerous tension in close proximity to the pole and steps with defective insulation, which was liable to suddenly sway and strike the hand of the appellant as it was passing the wire.    The appellant had the legal right to presume that the appellee had performed its duty and had the best insulations on the wires at this place, and maintained it in a proper and safe condition The failure of the appellant to anticipate this breach of duty

on the part of the appellee, the same not . being open and ob-
vious or discoverable by the exercise of ordinary care on the
part of the appellant was not contributory negligence on his
part.    1 *Shearm. & Redf. Neg.*, sec. 92; 2 *Thomp. Neg.*, sec.
18, p. 1172; *Deering Neg.*, sec. 16; 7 *A. & E. Ency. Law*,
391; *Bradford* v. *Boston R. Co.*, 160 Mass. 392; 35 N. E.
1131; *Eastland* v. *Clarke*, 165 N. Y. 420; 70 L. R. A. 751;
*B. & O. R. Co.* v. *Hauer*, 60 Md. 463; *Peoples Bank* v. *Mor-
golofski*, 75 Md. 444; *Straus* v. *United R. Co.*, 101 Md. 497.
In the *Morgolofski case, supra*, this Court thus expresses this
principle of law, "It was undoubtedly the duty of the defend-
ant to operate the elevator in question with reasonable care
and vigilance *and the plaintiff had a right to assume this duty
would be faithfully performed.*   So *assuming*, he would not be
required to exercise that degree of caution which could prop-
erly and fairly be demanded of him under other circumstances."
In ·the *Straus case, supra*, this ʼprinciple of law is thus stated
by this Court, "It would not be negligent that he (plaintiffʼ)
did not anticipate the unusual violence of the lurch   *   *   *
ought or could the appellant have *anticipated* the lurch under
the circumstances ?"

May not the same question be asked in· the case at bar?
Ought the appellant, under the circumstances, in descending
this pole have anticipated a sudden sway of a defectively insu-
lated high-tension wire ?

(*d*) The law imposed upon the appellee the duty to protect
the appellant and other linemen, who, in discharge of their
duties, ascended or descended the. pole in question from
danger or injury from its swaying and defectively insulated
high-tension wires in close proximity to the pole and steps
and hence in law the appellant could not be said to be guilty
of contributory negligence or assume any risk, unless he *knew
or saw* the danger and voluntarily exposed himself to it. *Per-
ham* v. *Portland Gas & Electric Co.* (Or.) 53 Pac. Rep. 14; *B.
& O. R. Co.* v. *Hauer*, 60 Md. 463.

(*e*) The law which must control the decision of this case on
this appeal has been heretofore clearly and concisely stated by
this Court in the following emphatic language:

"As applied to the management by the appellee of its wires charged with high-tension current, *this legal duty* would require it to see that its wires, when strung *where persons are liable to come in contact with them* were *properly placed* with reference to safety of such persons, and were *properly insulated.  Brown* v. *Edison Elec. Co.,* 90 Md. 400.

The following are the leading cases on the subject under consideration, and the first six were referred to and cited with approval by this Court in the case *Brown* v. *Edison Elec. Co., supra.*  They all show the palpable error of the prayer taking this case from the jury because of the contributory negligence of appellant.  *Ennis* v. *Gray,* 87 Hun. 356; 34 N. Y. *Sup.* 379; *Griffin* v. *U. Elec. Lt. Co.,* 164 Mass. 492; 41 N. E. 675; *Giraudi* v. *Elec. Imp. Co.,* 107 Cal. 120; 28 L. R. A. 59; *Overall* v. *Louisville E. L. Co.* (Ky.) 47 S. W. 442; *Perham* v. *Portland Gen. E. Co.* (Or.) 53, Pac. 14; *Reagan* v. *Boston E. L. Co.,* 167 Mass. 406; 45 N. E. 743; *Looney* v. *Met. R. Co.,* 200 U. S. 485; *Newark* v. *Elec. Lt. Co.,* 39 U. S. App. 425; *Clements* v. *Elec. Lt. Co.,* 44 La. Ann. 692; 16 L. R. A. 43; *Illingsworth* v. *Lt. Co.,* 161 Mass. 583, 25 L. R. A. 552 *Mc-Laughlin* v. *Lt. Co.* (Ky.), 37 S. W. 851; *McKay* v. *So. Bell T. & T. Co.* (Ala.), 19 So. 695; *Dwyer* v. *Buffalo Gen. Elec. Co.,* 20 N. Y. App. Div. 136.

*Geo. Dobbin Penniman* and *C. Baker Clotworthy* (with whom was *J. S. Lemon* on the brief), for the appellee.

The declaration seeks to charge the defendant with two grounds of negligence, the construction of the line and the maintenance thereof, and having so charged it was incumbent upon the plaintiff to produce evidence to substantiate the charge so laid.  *Nugent's case,* 86 Md. 349; *Abbott's case,* 75 Md. 152.  There was absolutely no evidence whatever produced at the trial to show that the line was either constructed in a negligent manner or that there was any negligence on the part of the defendant in maintaining the same.  No witnesses were examined on the character of the construction, not even he plaintiff, who as a lineman with experience in the construc-

tion of overhead wires was probably competent to point out defects did such defects in fact exist.   There was nothing to show that the appellee's wires were not strung before the telephone pole was planted, and the close proximity of the electric lighting wire to the pole was caused by the telephone company in planting its pole in that place.

No witnesses were examined as to the maintenance of this line, except the witness Russell, general superintendent of the appellee, who, upon cross-examination, testified as to the construction and the character of the material used.   The only evidence in the record relating to the wires of the appellee showed that the wires were strung about twenty-five feet above the highway, where no one but persons familiar with the handling of wires could come in contact therewith, and that the wires themselves were what is known as triple braided weather proof wires, and that the insulation of these wires at the time of the accident appeared to be perfect.

The only affirmative proof, therefore, in the whole of the plaintiff's case directly negatives the charge of negligence as laid in the declaration, and we respectively submit that the plaintiff has utterly failed to meet the rule of law as laid down in this State—that he who charges negligence in another resulting in injury to himself, must prove the negligence charged before he will be permitted to recover.   It is not sufficient for a plaintiff in a case, like the one at bar, to prove simply an injury and then ask the Court to permit the jury to speculate as to the defendant's negligence.   He must point out the particular act of negligence upon which he relies.   Where negligence is charged it must be proved.   *Nugent's case,* 86 Md. 349; *Abbott's case,* 75 Md. 152; *Stsasburger v. Vogel,* 103 Md. 85.

There being no evidence of negligence on the part of the appellee, the Court was right in withdrawing the case from the consideration of the jury.   *Sprigg v. Moale,* 28 Md. 497; *Cropper v. Pittman,* 13 Md. 190; *Brinkley v. Platt,* 40 Md. 529; *Knell v. Briscoe,* 49 Md. 415; *Lewin v. Uzuber,* 65 Md. 341; *County Commissioners v. Wise,* 75 Md. 43; *Abbott's case,* 75 Md. 152; *Yorktown Turnpike Road v. Cason,* 72 Md. 377.

Viewing the plaintiff's conduct on the morning of the accident, we think there are four controlling factors, which clearly show that he should have known and in fact did know the latent danger from the various wires and electrical contrivances in and about that pole and they are as follows, all taken from the plaintiff's own testimony. *First.* He knew that the appellee's wires carried an electric current of 2,080 volts. *Second.* That the high power current will come through the insulation if the wire comes into contact with a "ground" or is "grounded." *Third.* That there was no necessity for the appellant to have come in contact with or touched the wires of the appellee, as the 20 inches of space was enough to go through without touching. And again he could have lifted his hand off without touching the wire. *Fourth.* That a "ground" could be made through the iron steps set in the pole.

Upon re-direct examination the appellant testified that the iron steps go into the pole three or four inches probably. That in the center of the pole there is no doubt some sap, and if the pole was dry on the outside it would absorb moisture from the ground and the moisture would gradually go up the interior of the pole, and the iron peg driven in might reach this interior moisture and make a good ground. And in the cross-examination he testified that it was perfectly possible according to his experience to get a ground through that pin, through the pole to the ground.

Thus it appears by the appellant's own testimony that he was fully aware of the danger of "grounding" the high potential wires of the appellee, and how they could be "grounded," and it was manifestly, therefore, his plain duty to avoid placing his body in such a position as to form a "ground" with the appellee's wires. But the appellant's own testimony shows that he utterly disregarded this plain duty and negligently permitted his left had to come in contact with the high-potential wire, while his right foot was resting on the iron step, through which, he testified, it was possible to make a ground.

This action of the appellant was not taken under the stress of an emergency, but deliberately and calmly, and in his own words there was no necessity for his touching the wires, and he could perfectly well have descended as he had ascended without coming into contact with them.    He had used this very pole many times before, he admitted, and by the exercise of ordinary care he had never been injured before.    It was a simple matter of using the rubber gloves he carried, or not permitting his bare hands to come in contact with the high-potential wires.

The first exception raises the question as to the propriety of the Court's ruling in refusing to permit a witness to testify as to any change of wires made on the pole in question since the day of the accident.

. This ruling of the Court is manifestly correct as the question before the Court and jury was, whether or not there was any negligence on the part of the defendant at the time of the accident directly contributing thereto, and this inquiry could not be aided by any testimony as to changes of the location of wires or other fixtures since the accident.    Such evidence tends to distract the minds of the jury from the real issue, and to create a prejudice against the defendant.    *Columbia and Puget Sound R. Co.* v. *Hawthorne*, 144 U. S. 405; *Morse* v. *Minneapolis and St. L. R. R. Co.*, 30 Minn. 465.    In the latter case, as cited, with approval by the Supreme Court, in Hawthorne's case, it was held:

"A person may have exercised all the care which the law required, and yet, in the light of his new experience, after an unexpected accident has occurred, and as a measure of extreme caution, he may adopt additional safeguards.    The more careful a person is the more regard he has for the lives of others, the more likely he would be to do so, and it would seem unjust that he could not do so without being liable to have such acts construed as an admission of prior negligence."

This ruling is entirely in accord with and involves the same principle as declared by this Court in *Crowther's case*, 63 Md. 558, and *Heige's case*, 83 Md. 271, in limiting the inquiry

as to responsibility for personal injuries to the exact conditions existing at the time of the accident.

The second exception raises the question as to the correctness of the Court's ruling in refusing to permit a witness to testify as to the relative merits of the insulating qualities of the wire used by the appellee and a wire known as oconite.

The question before the Court and jury, so far as the wires of the appellee were concerned, was whether or not the appellee, in the construction of its line, had used reasonably preper and suitable material. This was the measure of the appellee's duty in the premises. *B. & O.* v. *Miller*, 29 Md. 260; *Duvall* v. *B. & O.*, 73 Md. 516; *Wood* v. *Heiges*, 83 Md. 271; *Brady* v. *Gas Co.*, 85 Md. 644; *Crowther's case*, 63 Md. 569.

As was said in *Crowther's case*, 63 Md. 569, "It was the duty of the jury to decide whether this particular road was safe for travel by evidence of its actual condition, and not by comparing it with the condition of other roads. And so again in *Wood* v. *Heiges*, 83 Md. 271, "The issue was whether the particular machinery was proper and suitable; and that was to be determined by its actual condition, and not by comparing it with other machines."

There was not only absolutely no evidence in the case that the appellee had not used due and ordinary care in the selection of the material for the construction of its line, but the examination of the witness Russell, who had laid out the work of putting up the wires, and who had thirty years' experience, was limited to the bare and single fact of the character of wire used, and was not asked one question as to why the particular wire was chosen.

The very witness under examination testified in response to a question as to different kinds of insulation that: "It is very hard to say which is proper insulation; there are differences of opinion about it among a good many experts as to insulation."

This answer illustrates how misleading as to the real inquiry would have been any comparison of insulating qualities of wires by this or any other witness.

The third exception raises the question of the correctness of the Court's ruling in refusing to permit the same witness to testify as to whether weather proof was proper or improper insulation of the wire in question. Before commenting upon the principle of law supporting the Court's ruling, we respectfully contend that the witness was incompetent to answer the question. Not only had he testified that there was a difference of opinion between experts as to proper insulation, but he only claimed to have *an idea* of the *quality* of the insulation described by Mr. Russell, and but little experience with it.

Surely *little experience in use* and *but an idea to quality* did not qualify this witness to usurp the province of the jury and thus determine whether the wire used was proper or not. The question before the Court to which this testimony was directed was whether or not the appellee had used due care in the selection of the material for the construction of its line, and this question should have been answered by facts and not opinions.

The question was also faulty in form as it asked the witness to give *his opinion on the case based upon what he had heard the various witnesses testify to*, instead of upon a case hypothetically stated similar in all respects to the case on trial, *as shown by the facts proved in the evidence. B. & O. R. R.* v. *Thompson*, 10 Md. 76–84; *Electric Light Company* v. *Lusby*, 100 Md. 651. No expert should be permitted to give his opinion except upon a case hypothetically stated similar in all respects to the case on trial, *as shown by the facts proved in the evidence.*

BRISCOE, J., delivered the opinion of the Court.

This action was brought by the plaintiff to recover damages for personal injuries sustained by the alleged negligence of the defendant, the United Electric Light and Power Company of Baltimore.

The declaration contains four counts. The first three charge negligence in the construction and maintenance of certain electric wires operated by the company in the town of Pikes-

ville, near the Reisterstown road, in Baltimore County.   The fourth charges negligence in permitting these wires to be and remain in a dangerous condition, exposed to contact with persons lawfully upon a telephone pole near its wires.

The Court below at the conclusion of the testimony on behalf of the plaintiff instructed the jury, that according to the undisputed evidence in the case the plaintiff directly contributed by his own negligence to the injuries he received.   The plaintiff excepted to the granting of this prayer, and the questions for our consideration are presented, on this exception and on rulings of the Court, as to the admissibility of testimony, during the trial.

At the time of the accident, the plaintiff was employed by the Maryland Telephone Company as a lineman to test the line and to answer what is known as "trouble calls" on the line.

On July 31st, 1902, he received a call and notice, to go to Pikesville to locate and ascertain "a trouble" on the line. When he reached the place of the accident he found it necessary in order to locate the trouble to ascend what is called "the distributing pole," with a cable box at the top.   He ascended by means of iron spikes driven on the side of the pole, as steps, from the ground to the cable box, a distance of fifty feet.   In going up he had to pass three electric wires of the appellee in close proximity to the pole, between the ground and the cable box.   The first wire was about three inches from the pole; the second about twenty-five inches and the third about fifty inches.   He ascended the pole without injury between the first and second wires and located the trouble at the cable box.   In descending his left hand came in contact with one of the wires, charged with 2,080 volts of electricity, he became unconscious and fell a distance of twenty feet to the ground and was injured.

He testified "I was coming down, I had my left hand on the step and my right foot on the step; I was to lower myself to get on the step below, and as I took my hand off to lower myself, the wire swung either by the wind or the repair car

coming down the road.  The car got these wires vibrating and they struck me.  I remember no more."

There was evidence that the appellee's wires were not properly placed and the wire, which struck the appellant's hand, as he descended the pole, was not properly insulated.

The main question, presented by the exception to the prayer, is, were the facts and circumstances of the case so patent and plain as to have authorized the Court in pronouncing them contributory negligence in law and in withdrawing the case from the consideration of the jury.

The law controlling this class of cases has been settled by numerous decisions of this Court.  It is this, where the facts are undisputed or where but one reasonable inference can be drawn from them, the question is one of law for the Court, but where the facts are left by the evidence in dispute or where fair minds might draw different conclusions, the case should go to the jury.

The plaintiff, in this case, was in the exercise of a duty that required him to ascend and descend the distributing pole and the appellee owed him a clear, legal duty, to have its wires so placed and insulated as to permit him to perform this work, in safety and without danger.  In *Brown* v. *Edison Elec. Co.,* 90 Md. 406, it is said, as applied to the management by the appellee of its wires charged with high-tension current the legal duty would require it to see that its wires, when strung where persons were liable to come in contact with them, were properly placed with reference to the safety of such persons and were properly insulated.

In the present case, the plaintiff ascended the pole to the cable box in safety and finished his work.  In descending, his hands came in contact with a high-tension wire of the appellee, which he had passed in safety in going up, but which had become suddenly detached from the pole while he was making the descent.  According to his evidence, "as I took my hands off to lower myself the wire swung, either by the wind, or a passing car, and it struck me."  He became unconscious and fell a distance of twenty to thirty feet, and was injured.  The

testimony in the case, also shows that the insulation of the high-tension wire, at the time of the accident, was defective, and this defect could not have been seen by the plaintiff as he ascended or descended the pole. According to the testimony on the part of the plaintiff, the injury would not have occurred if the wire of the appellee had been properly insulated or properly placed.

We are of the opinion that the question of due care or negligence on the part of the plaintiff, under all the facts of this case, was one for the jury, and the Court committed an error in withdrawing the case from its consideration, in granting the defendant's prayer, which said, that the appellant was, as a matter of law, guilty of contributory negligence.

The ruling on the first exception was correct. The change of the location of the wires after the accident, could not affect the responsibility of the appellee, at the date of the accident. *Columbia* v. *Hawthorne*, 144 U. S. 405; *Balto. & Yorktown* v. *Crowther*, 63 Md. 558; *Wood* v. *Heiges*, 83 Md. 271.

There was no error in the rulings of the Court on the second, third and fourth exceptions. They all relate to the refusal of the Court to permit the witness Macodrom to testify as to the insulation of other wires, than those in use by the appellee company.

There was no proper foundation laid for the propounding of these questions and the Court was correct in refusing to permit the witness to answer them. *Wood* v. *Heiges*, 83 Md. 271; *Crowther's case*, 63 Md. 569; *B. & O. R. R.* v. *Thompson*, 10 Md. 76; *Electric Light Co.* v. *Lusby*, 100 Md. 634.

Being of opinion, the case was improperly withdrawn from the jury, by the granting of the defendant's prayer, as herein indicated, the judgment will be reversed and a new trial awarded.

*Judgment reversed, and a new trial*
*awarded, with costs.*