CENTRAL UNION TELEPHONE CO. v. CITY OF CONNEAUT.

(Circuit Court of Appeals, Sixth Circuit. January 22, 1909.)

No. 1,831.

1. MUNICIPAL CORPORATIONS (§ 206*)—AGENTS—SUPERINTENDENT OF ELECTRIC LIGHT PLANT—AUTHORITY.

Where a city, owning an electric light plant in charge of trustees, employed a superintendent, without special instructions concerning construction and maintenance of wires, he had authority in carrying the electric light wires over the wires of a telephone company to adopt and carry out any scheme of detail reasonably calculated to accomplish the purpose.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 206.*]

2. EVIDENCE (§ 5*)—JUDICIAL NOTICE—DANGER—ELECTRICITY.

Judicial notice will be taken that an electric light wire so placed that it occasionally comes in contact with a telephone wire is dangerously near the same as a known fact of general intelligence.

[Ed. Note.—For other cases, see Evidence, Dec. Dig. § 5.*]

3. MUNICIPAL CORPORATIONS (§ 794*)—DEFECTIVE STREETS—ELECTRIC POLE EXCAVATION—PROTECTION—DUTY OF CITY.

Where a city electric lighting superintendent informed the superintendent of defendant telephone company that if the latter would dig a pole hole in a street, at a point where the city's electric wires crossed the telephone wires, the city would put in a new pole, and defendant thereupon made the excavation, the city was bound to furnish the pole within a reasonable time, and on its failure to do so was thereafter bound to keep the hole protected so that it would not cause injury to pedestrians.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1653; Dec. Dig. § 794.*]

4. MUNICIPAL CORPORATIONS (§ 790*) — DEFECTIVE STREETS—POLE HOLES—NOTICE—NEGLIGENCE.

Defendant company dug an electric pole hole in a street under an agreement with the city's electric lighting superintendent to raise a pole therein to carry the city's electric light wires over defendant's telephone wires at an intersection. The city neglected to put up the pole for three months, during which time the lighting superintendent made temporary provision for the wires, and, several times finding the hole uncovered, recovered it. A pedestrian thereafter fell into the uncovered hole and was injured, for which he recovered damages against the city. Held, that the city had notice of the defect through its lighting superintendent, and was solely negligent in permitting the hole to remain in the street unprotected, and therefore could not recover over against the telephone company any part of the damages recovered by the pedestrian.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1645, 1646; Dec. Dig. § 790.*]

In Error to the Circuit Court of the United States for the Northern District of Ohio.

A. E. Clevenger and S. H. Tolles, for plaintiff in error.

A. M. Cox, for defendant in error.

Before LURTON and SEVERENS, Circuit Judges, and TAYLOR, District Judge.

SEVERENS, Circuit Judge. This is an action brought by the city of Conneaut against the telephone company to recover the damages

and costs sustained by the former resulting from the alleged negligence of the latter in permitting an excavation, made by it in one of the streets of the city for the erection of a telephone pole, to remain in an unprotected condition, in consequence of which one Shipman had been injured and, in a suit brought against the city to recover therefor, had recovered judgment for damages and costs. At the time of the occurrences which were the basis of the suit brought by Shipman, Conneaut was a village of Ohio. Afterwards, and before the present suit was brought, it became a city. This is of no importance except to show that the city is the lawful successor of the village and competent to be the plaintiff in the action. A jury was waived, and the cause was, by agreement, tried by the court. There was a finding of the facts, and, as there is no contention that the findings are wholly unsustained by evidence, there is nothing to be determined but the questions of law arising upon the facts found. These were as follows, omitting now such as relate to the citizenship of the parties and the recovery of the judgment by Shipman, and the damages incurred by the city in consequence of that suit:

"The defendant * * * was during all of the time hereinafter mentioned the owner of and engaged in the operation of a telephone system in the village (now city) of Conneaut, Ohio, under and by virtue of an ordinance duly passed by the council of said village on the 14th day of May, 1894.

"By the terms of said ordinance, which was duly accepted by said defendant, defendant agreed to hold the village of Conneaut free and harmless from all damages by reason of its negligence.

"It was further agreed in said ordinance that poles thereafter to be located or set upon any of the streets of said village (now city) should be at the approval of the street committee of said village (now city) of Conneaut, Ohio.

"Prior to the 15th day of October, 1901, the Central Union Telephone Company had constructed and was maintaining on the westerly side of Sandusky street, in said city, as a part of its telephone system, telephone wires attached to poles. These wires crossed Main street, and were attached to poles on the southerly side of said Main street, nearly at right angles, passing over wires of the electric light system of said village or city.

"Said village of Conneaut, long prior to said 15th day of October, 1901, had established, and was operating as the owner thereof, a municipal electric lighting system, providing street lights and electric lighting for private consumers, and the electric light wires were strung upon cross-arms attached to poles in the ordinary manner along the curb lines of some of the streets.

"One of the wires or leads of the municipal plant ran along the northerly curb line of Main street, passing by Sandusky street, and was attached to an arm on a city pole in the westerly line of Sandusky street, and below where the telephone wires of the defendant passed over the same.

"At and prior to October 15, 1901, the lighting plant of the village was under the control and management of a board of electric light trustees, as provided by sections 2486, 2487, 2488, and 2489 of the Revised Statutes of Ohio.

"In August of the year 1901 it was determined by the authorities in control of the electric light plant to make changes in their wire system, and in so doing they placed two electric light wires on the Main street lead.

"Under the provisions of section 2489 of the Revised Statutes of Ohio then in force, said board of electric light trustees appointed one W. E. Fownes to the position of superintendent, and as such, under the direction of said board, he had general charge of the work of making said changes; and some time before the 15th day of October, 1901, under the direction of the board of electric light trustees, he attached two additional electric light wires to an arm attached to said pole set in the northerly line of Main street and the westerly

line of Sandusky street, and these wires were so placed that a wire of the telephone company would at times come in contact with them.

"At this time one Andrew C. Tinker was the local superintendent of the defendant, the Central Union Telephone Company, at Conneaut, Ohio.

"In reference to this situation Fownes and Tinker had a conversation, in which Fownes said to Tinker that, if he (Tinker) would dig a hole for a new telephone pole, he (Fownes) would put in a higher pole for the telephone wires as soon as he took some poles out of Harbor street which he thought would be of suitable height, the purpose being to find a pole in Harbor street which would be suitable to be put in the excavation to be made by the telephone company. It was contemplated by the parties that there would be some delay in procuring and setting the pole.

"Tinker assented to this arrangement, and forthwith caused the new excavation to be dug close to the base of the pole which was then there. This excavation was made and completed by the telephone company on the 15th of October, 1901, and when completed was left by it covered and protected. As there was some delay in getting to work on Harbor street, Fownes, the electric light superintendent, nailed some 2 by 4 scantlings to the top of the Sandusky street telephone pole to temporarily raise and attach the telephone wires thereto, thus removing them from contact with the electric light wires. When Fownes came to take the poles out of Harbor street, he found that they were in no condition to reset.

"After making the excavation and covering it, defendant paid no further attention to it. The superintendent of the electric light plant found the excavation uncovered several times and re-covered it, after this conversation with Tinker and before the accident. No pole was ever placed in the excavation.

"On the 13th of January, 1902, one William W. Shipman, passing along Sandusky street, fell into the excavation and suffered the injury upon which the judgment was recovered, which is the basis of this action to recover over for the city of Conneaut from the defendant.

"The board of electric light trustees of the village of Conneaut had no knowledge of any promise on the part of Superintendent Fownes to furnish the pole mentioned to this defendant, the Central Union Telephone Company, and had no knowledge of the excavation until after the accident to Shipman.

"Neither the street committee of the council nor the council of the village of Conneaut had knowledge of the excavation at the time the same was made, or afterwards until the accident to said Shipman, and never made or gave any approval to the change in location of said pole or the excavation of said hole in Sandusky street.

"On or about the 9th day of March, 1903, said William W. Shipman brought his action in the court of common pleas of Ashtabula county, Ohio, against the city of Conneaut, to recover for personal injuries alleged to have been sustained by falling into said excavation.

"The defendant, the Central Union Telephone Company, was duly notified by the city of Conneaut of the action brought against it by the said Shipman, and was by the city and those in authority asked to appear and defend the suit, but the telephone company did not do so, but did employ counsel, who appeared to watch its interest at the trial of said Shipman."

Upon these facts the court found as matter of law:

"That it was the primary duty of the defendant, the Central Union Telephone Company, to guard and protect said excavation in Sandusky street, by proper coverings or otherwise, so that people using the street should not fall into the excavation and be injured thereby."

The court thereupon directed a judgment in favor of the plaintiff in the sum of $10,519.37 and costs. In order to support this, judgment, the necessary facts must be affirmatively found or must be reasonably inferable from those found.

We think the facts did not warrant the judgment, and that it should have been given in favor of the other party. In the ordinance by which was granted the franchise to the telephone company to con-

struct and maintain in the streets of the city a telephone system, it was provided that the company "should hold said village free and harmless from all damages by reason of its negligence." This stipulation is developed in the finding of facts as if it were important. But it seems to amount to nothing more than a term of the agreement which the law would raise by implication.

The telephone company having erected its poles and strung its wires in the streets of the city by its permission, and no fault being found with the manner in which it had been done, the city was bound to respect the rights of the telephone company thus acquired. It had not granted an exclusive franchise. It was not debarred from granting a franchise to another company to erect in its streets another telephone or a lighting system, or from erecting one for itself. But in either of these events, the other company, or the city, as the case might be, would be bound to construct its works in such manner as not to unnecessarily interfere with the poles and wires which the telephone company had rightfully constructed in the same locality. When, therefore, the city proposed to carry its electric light wires across the telephone company's wires, it was bound at least, in the absence of any order on the telephone company to make a change in its structures, to so string its wires, if that were reasonably practicable, as not to interfere with the telephone company's lines. It could not arbitrarily string its wires so near to the wires already there as to produce a condition of danger and thereby compel the telephone company to change its structures. And, if the trustees had given no directions as to how the crossing should be made, it was necessarily left to the superintendent as to how it should be done. Some mutual arrangement with the telephone company would be a sensible and proper thing, and this was the course adopted by the superintendent.

The substance of the controversy rests in the question of the scope of the authority vested in Fownes, the city's superintendent, to whom was intrusted the general charge under the direction of the trustees of the work of making the changes in its system of electric light wires. It does not appear that the trustees gave any instructions to the superintendent about the work, or, if they did, what the instructions were. For aught that appears, he had authority to do, with respect to this work, what the trustees might have directed him to do. Counsel for the city seem to put too rigid a limitation upon the power of the superintendent, and to suppose that he was only to supervise the workmen in the execution of the specifications of a plan laid down for him. It might well be that the superintendent was not intrusted with the duty of deciding upon the larger questions of city government or the expediency of large undertakings in its business affairs, such as the question of lighting its streets by electricity, or upon what streets the wires should be carried. But when the question concerns the minor details of the execution of extensive plans, and an agent is employed to conduct them, and no limitations are imposed upon him either by law or the express command of his superiors, it would seem that he had authority to do what was reasonably necessary to accomplish the intended result. It is reasonable to believe that this work was com-

mitted to the charge of the superintendent, because he was better qualified to take charge of the work than an ordinary person would be. We cannot doubt that when he encountered the problem of carrying the city's electric wires across the wires of the telephone company, and when he found that he had carried his wires dangerously near the telephone wires, he had authority to correct the mistake by raising his own or lowering them, or to arrange with the telephone company for a change in the location of their own wires, so as to obviate the difficulty, or to adopt any other scheme of details reasonably calculated to accomplish the purpose. His duties did not end when he got into the difficulty. They continued until the undertaking was fully accomplished and the wires were safely and securely located. Counsel urge that the finding of the court is not that the wires were put dangerously near those of the telephone company, but only that they were so placed that they would sometimes come in contact with them. But we should take judicial notice that an electric light wire so placed that it sometimes comes in contact with a telephone wire is dangerously near. It is a fact known to the general intelligence.

When the difficulty arose, the superintendent made an arrangement with the telephone company whereby the latter was to make an excavation at that place near the pole, which in the meantime was to stand, and the city was to furnish a higher pole and put it in, not immediately, but as the law would imply, no time being stated, within a reasonable time. The telephone company dug the hole, and had reason to expect that the pole would without unnecessary delay be put in place. The telephone company left the hole covered and protected. The city was disappointed in not finding a suitable pole as it had expected, and it neglected to put one in for a period of three months. Meantime the superintendent had made temporary provision by carrying up the wires on the pole then standing by means of scantling, and several times, finding the hole uncovered, re-covered it.

We think the responsibility for keeping this excavation protected after a reasonable time had elapsed for putting in a new pole devolved upon the city, and that the injury to Shipman was the result of its own fault. And, if the fault were not solely the fault of the city, it cannot, we think, be doubted that the city was negligent in not discovering the dangerous place and making it safe. Moreover, we should be inclined to the opinion that, as the participation of the superintendent in this undertaking of the city was not yet ended, the city had notice through him of existing conditions, and was at fault in not rectifying them. In either of these aspects of the case the city was a wrongdoer, and there is no right of contribution between such parties.

The judgment should be reversed, with costs, and the cause remanded with directions to enter a judgment for the defendant below.

NOTE.—The following is the opinion of Tayler, District Judge, in the court below:

TAYLER, District Judge. This is a suit brought by the city of Conneaut against the Central Union Telephone Company to recover the sum of $9,518.29, being the amount of a judgment recovered by one William W. Shipman against the plaintiff in this case, and for the expenses of defending the suit brought by Shipman against this plaintiff. Shipman recovered a judgment in the

state court from the city of Conneaut for injuries received by him in consequence of his falling into an excavation made for a telephone pole on one of the streets of the city of Conneaut. The defendant denies any liability on its part in any event, and, in addition, alleges that, if it was guilty of any wrong in connection with the excavation referred to, it was a joint tort-feasor with the plaintiff herein, and, consequently, in the event of a recovery against one joint tort-feasor, the other cannot be held for contribution. The telephone company claims that, while its employés made the excavation, it did so under an agreement with the city which left the responsibility for the care of the excavation wholly upon the city, and that it was its (the city's) negligence wholly which resulted in the injury.

The substance of the agreement, if such it may be called, which the superintendent of the electric light plant made with the superintendent of the telephone company, was this: That since a new wire was being strung for the electric light plant, which would come close to, if not in contact with, the telephone line, the telephone line ought to be elevated so as to clear the electric light wire. These two superintendents, therefore, agreed that the telephone company should dig the hole and the city furnish and set the pole, which had to be some five feet longer than the other poles in use in that vicinity. There was no agreement as to just when the hole should be dug, or when the new pole should be set in the hole, nor as to who should take care of the excavation in the interval that might elapse between digging the hole and setting the pole. The superintendent of the electric light plant said to the superintendent of the telephone company that he was going to replace some electric light poles on Harvard street, and as soon as he got to that he could find a Harvard street pole that would be suitable for this place in question. It therefore seemed to be in contemplation of the parties that there would be some delay for an indefinite time before the electric light people would get to Harvard street and find the needed pole. The superintendent of the electric light plant says it was some time before they reached Harvard street, and that when they did they found that none of the poles were satisfactory, with the result that no pole was then, or ever, furnished or put into this excavation. The employés of the telephone company dug the hole and covered it up. At least once after that it came to the knowledge of the superintendent of the electric light plant that the hole was uncovered, and he had it protected by planking or otherwise.

It seems to me that in considering what are the rights and duties of the parties, as respects the claims made in this case, two facts must be borne in mind: (1) That there was no understanding as to just when the superintendent of the electric light plant would be ready to furnish the pole; (2) that there was nothing said or understood between these two representatives of the electric light plant and the telephone company as to who should take care of the excavation after the hole was dug. The defendant claims that it is not liable to the city in any event, that it is not even a joint tort-feasor, that it dug this hole under an arrangement with and by the direction of the city, and that, having done so, its duties and its responsibilities ended. To this the city replies: First, that the superintendent of the electric light plant had no authority whatever to make any arrangement or contract with the telephone people for the digging of this hole or the reconstruction in any respect of the line of the telephone company, that all such matters were under the control of the council, and that even the trustees of the electric light plant had no such power; second, that whatever the authority of the superintendent might have been to make this arrangement with the telephone company, or however incidental this work may have been to the general work of reconstructing the electric line, the hole was dug by the telephone company as a part of its work, and, upon its own theory of the agreement, that particular part of the work was to be done by the telephone company and something else by the electric light people, that the duty to keep this excavation covered until the pole was set was a primary duty of the telephone company. The city, through the electric light plant, was not bound to keep track of the holes that might be excavated by the telephone company, even though excavated by the authority of the city.

Whatever may be the soundness of the first position contended for by the plaintiff, the second proposition seems to be sustained by the decision of the Supreme Court of the United States in the case of Chicago v. Robbins, 67 U.

S. 424, 17 L. Ed. 298, where the court lays down the rule as follows: "The city must be reimbursed unless it has been itself in fault. The rule of law is that one of two joint wrongdoers cannot have contribution from the other." It is difficult in this case to see how the city was to blame, and least of all how Robbins can impute blame to it. Robbins desired to erect a large storehouse, and, to add to its convenience, wished to excavate the earth in the sidewalk in front of his lot. Without express permission from the city, but under an implied license, he makes the area. No license can be presumed from the city to leave the area open and unguarded, even for a single night. The privilege extended to Robbins was for his benefit alone, and the city derived no advantage from it, except incidentally. Robbins impliedly agreed with the city that, if he was permitted to dig the area for his own benefit, he would do it in such a manner as to save the public from danger and the city from harm; and he cannot now say that: True it is you gave me permission to make the area, but you neglected your duty in not directing me how to make it, and in not protecting it when in a dangerous condition. If this should be the law, there would be an end to all liability over to municipal corporations, and their rights would have to be determined by a different rule of decision from the rights of private persons. Because the city is liable primarily to a sufferer by the insecure state of the streets offers no reason why the person who permits or continues a nuisance at or near his premises should not pay the city for his wrongful act. The city gave no permission to Robbins to create a nuisance. It gave him permission to do a lawful and necessary work for his own convenience and benefit, and if in the progress of the work its original character was lost and it became unlawful the city is not in fault. We can see no justice or propriety in the rule that would hold the city under obligation to supervise the building of an area such as this."

In its essential features there is not much distinction to be discovered between the facts as apparent in the quotation above made from the decision of the Supreme Court and the facts in this case. It is true that in a sense in this case the city had an interest apparently in the putting in of this new pole; but, after all, both were interested, and the understanding between the two was, whatever might be the rights and duties of the parties as to third persons, that the telephone company was going to dig the hole and the city was going to put in the pole. Now, it is not for the telephone company to say that it may dig a hole and leave it, and rely upon the fact that the city is going at some time to put a pole in, and answer to a claim arising out of an injury that it was not for the telephone company to take care of this hole or to pay any attention to the seasonable time when it should be dug. Nor was it, under the circumstances—putting them in their strongest form for the telephone company—for the city to fix the time when the hole should be dug, or to postpone the digging of it, or to watch the hole as between it and the telephone company. The business was the business of the telephone company. They were its poles and its wires that were to be taken care of. No work could be done with its wires without its knowledge. And so it is no answer to the situation which is thus created for the telephone company to say that it obeyed the instructions of the city officer and dug the hole, and then left the rest of the work to be done by the city officials. The work of putting in the pole and stringing the wires was of such character as that the telephone authorities would necessarily know when it was to be done and, indeed, participate in the stringing of the wires on the new pole. So, if the defendant prematurely dug this hole, then it had simply one primary and constant and continuing duty to perform, and that was to see that the excavation was so protected as that injury should not result.

Supporting, also, the doctrine of the case just quoted, is Clark v. Fry, 8 Ohio St. 359, 72 Am. Dec. 590, Columbus v. Penrod, 73 Ohio St. 209, 76 N. E. 826, 3 L. R. A. (N. S.) 386, 112 Am. St. Rep. 716, Morris v. Woodburn, 57 Ohio St. 330, 48 N. E. 1097, Railroad Company v. Morey, 47 Ohio St. 207, 29 N. E. 209, and the case of Robbins v. Chicago, 71 U. S. 657, 17 L. Ed. 298, affirming the case of Chicago v. Robbins, supra, in which the proposition is emphasized that, although we may infer permission to build an area, permission cannot be inferred to leave it in a state dangerous to persons passing by. And so in this case we may admit authority and permission to make this excavation, at

some indefinite time in the future to be filled by a pole by the city; but authority cannot be inferred from that to permit this excavation to become a nuisance or in any way to limit the primary duty of the person who made the excavation to see that it was kept safe until finally turned over to the person whose duty it was to use it.

In view of the reasons given above, it seems to me that the defendant is liable, and a judgment may be rendered accordingly.