LYMAN B. JORDAN, administrator, *vs.* MALDEN ELECTRIC COMPANY.

Middlesex.    January 9, 1923. — March 3, 1923.

Present: RUGG, C.J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Negligence*, Contributory, Causing death.

At the trial of an action of tort against an electric light corporation for causing, through negligence, the death of a carpenter and jobber who, while at the defendant's invitation upon the roof of its plant for a high tension system, was killed by a current of electricity at high voltage jumping from a conductor rod, constantly charged in an enclosure for lightning arrestors, without his touching the rod, there was evidence tending to show that the plaintiff's intestate was told, while he was upon the roof, when he proposed to examine a part of it which he had been asked to examine, "You can't look at it now, that is all alive in there," and that the warning given was merely not to touch "copper wires up high, shown to him." *Held*, that

(1) It could not be assumed as matter of law that the intestate knew, or in the exercise of ordinary care ought to have known or appreciated, that, while in a position free of all contact with the arrestors and their equipment, especially

the "copper wires up high," and looking at the roof or a roof bushing, he was exposing himself to the peril of instant death.

(2) The question, whether the intestate was guilty of contributory negligence, was for the jury.

At the trial of the action above described, there was evidence tending to show that the plaintiff's intestate was given no warning of the concealed risk to which he was exposed, namely, that, even if he did not come in contact with any portion of the mechanism, a current of electricity at a high voltage might jump from a conductor rod constantly charged to his person, and complete the circuit by passing through his body, and therefore a verdict that his death was caused by negligence for which the defendant was responsible, was warranted.

TORT for causing the death through negligence of the plaintiff's intestate, Frederick L. Jordan. Writ dated October 20, 1917.

In the Superior Court, the action was tried before *Hammond*, J. Material evidence is described in the opinion. At the close of the evidence, the judge denied a motion of the defendant that a verdict in its favor be ordered. There was a verdict for the plaintiff in the sum of $2,000; and the defendant alleged exceptions.

*L. C. Doyle,* for the defendant.

*E. C. Upton,* for the plaintiff.

BRALEY, J. It is contended by the defendant that a verdict should have been directed because there was no evidence warranting the jury in finding that the intestate exercised ordinary care or that his death was caused by the company's negligence. The plaintiff's intestate, a carpenter and jobber, had been employed by the defendant on the roof of its electric light plant in work connected with bases and forms for mushroom porcelain bushings to set in, and on openings through the roof, while his men worked on the iron base which was to support the arrestors. But thereafter he had not been on the roof until the day of the accident. The defendant however had in the meantime installed two sets of lightning arrestors connected with its high tension system for the distribution of electricity and "to provide against the sudden force of excessive current caused by lightning or other abnormal condition." The steel tanks of the arrestors were charged at intervals during the day with electricity and electrolite by an employee apparently going to the roof and pulling a pendent chain at the easterly end of each set of arrestors, which caused the excess of the static electric current to flow through the electrolite and thence by a discharge pipe to the ground. "From the top of each tank, running upward, was a copper rod or conductor,

solid, and about one inch in diameter. Three of these conductors in each set of arrestors severally ran to one side of what was known as a horn-gap, one gap being above each tank. The fourth tank had no horn-gap, but was connected by rods or wires to and into its adjacent tank. The high tension lines came up through the roof in the roof bushings and were severally carried from the bushings to the other side of the horn-gaps by copper rods or conductors similar in size to those running up from the tanks. . . . The horn-gap was so spaced that any current in excess of the normal amount for which the line was constructed would jump across the space or gap between the two horns or small rods and enter the tanks, dispersing itself over the cones and passing thence by spiral wire to the ground." To enable the operator to reach the chain more easily the company contemplated building a platform to be used with the arrestors, and had requested the intestate to submit an estimate for the work, as well as to examine the cement and covering of the "middle westerly roof bushing," the condition of which might be such as to cause water to drip into the plant from the under side of the roof. In response to this request and accompanied by the defendant's resident engineer in charge of the high tension system, and the foreman of the meter department, the intestate went upon the roof for the purpose of taking measurements for the platform, and of making an examination of the bushing. It is plain that under such conditions he was lawfully upon the premises. *Hall* v. *Henry Thayer & Co.* 225 Mass. 151. *Carpenter* v. *Sinclair Refining Co.* 237 Mass. 230. It having been decided by the engineer and foreman not to build the platform but to lengthen the chain, the intestate according to the testimony of the foreman said, "Well, as long as I am up here I would like to look at that plastic cement that you say has been slipping," and the engineer replied, "You can't look at it now, that is all alive in there." The engineer called as a witness said "that was all the warning given to Mr. Jordan." But evidence was introduced that the foreman in describing to the intestate's brother-in-law what occurred said "that the danger was copper wires up high," and he warned Fred not to touch those copper wires up high, and although an eyewitness of the intestate's death, he "did n't see him touch any wires." It could be found that when killed the intestate was near the second bushing of the

westerly set of arrestors, stooping over, where he was seen by the foreman to straighten up, "a ribbon or arc of flame" extending from his person to a conductor rod of that set of arrestors appeared to pass through his body, which in a moment or two relaxed and fell over the parapet of the roof to the ground forty feet below. It cannot be assumed as matter of law that the intestate knew, or in the exercise of ordinary care ought to have known, or appreciated, that while in a position free of all contact with the arrestors and their equipment, especially "the copper wires up high," and looking at the roof or a roof bushing, he was exposing himself to the peril of instant death. The question was for the jury. *Linton v. Weymouth Light & Power Co.* 188 Mass. 276, 278. *Prince v. Lowell Electric Light Corp.* 201 Mass. 276. *Puffer v. Hazard,* 240 Mass. 195. If the engineer or foreman cognizant of the danger, and whose credibility is not before us, and whose evidence, even if in some material particulars it may not have been directly contradicted, the jury were not bound to follow, was found to have given the intestate no warning of the concealed risk to which he was exposed; that, even if he did not come in contact with any portion of the mechanism, a current of electricity at a high voltage might jump from a conductor rod constantly charged to his person, and complete the circuit by passing through his body, the defendant's negligence was established. *Linderbaum v. New York, New Haven & Hartford Railroad,* 197 Mass. 314. *Eustis v. Boston Elevated Railway,* 206 Mass. 143, 144, and cases cited. *Silver v. Graves,* 210 Mass. 26, 31. *Hall v. Henry Thayer & Co.* 225 Mass. 151, 154, and cases cited. It follows that on either ground the exceptions are not well taken, and they must be overruled.

*So ordered.*