ELIZABETH THEISEN v. MINNESOTA POWER & LIGHT
COMPANY AND OTHERS.
VILLAGE OF WADENA, APPELLANT.[1]

August 6, 1937.

No. 31,154.

*Barron & Barnard,* for appellant.
*Joseph A. Quinn* and *Dell & Rosengren,* for respondent.

PETERSON, JUSTICE.

Appeal by defendant village of Wadena from a judgment in
favor of plaintiff in an action to recover damages for death by

[1]Reported in 274 N. W. 617.

wrongful act. Plaintiff's decedent, John F. Theisen, was killed by an electrical discharge from electric wires while attaching a neon sign to a pole of the defendant village, installed to support a street lamp. The pole was directly beneath high tension wires of a power line maintained by the Minnesota Power & Light Company to conduct electric current. The village pole, 24 feet 7 inches above the ground, was located between two poles used to support the power line, and the wires running between the power line poles sagged so that the top of the village pole was seven inches above the lower wires of the power line. These wires were four feet distant on either side from the top of the village pole, and were uninsulated, high tension wires, carrying a current of 33,000 volts. A street lamp was attached to the pole at a point 18 feet 9 inches above the ground. The village of Wadena owns an electrical distribution plant. It buys its electricity from the Minnesota Power & Light Company. One Ehrke was the general superintendent of the village light plant and system. Defendants Baehr, Kenyon, and Lovdahl, who were the owners of the Vagabond Tourist Cabins, employed Theisen to hang the neon sign on the pole. Kenyon had spoken to Ehrke some time prior to the time Theisen attempted to hang the sign and told him that he wanted to place the neon sign on this pole. Because Kenyon and his associates desired to use the pole, which was adjacent to the highway, on which to hang the sign at a position in which it would be plainly visible to the traveling public on the highway, Ehrke refused to remove the pole, although requested to do so by the Minnesota Power & Light Company, which advised him that the pole with the wires on it created a dangerous condition in the location in which it was. It appears that Ehrke had general charge of the electric light plant. He had the title of superintendent. Some two years previously the owners of the tourist cabins installed a flood light on the north side of the pole without the consent of the village, but Ehrke, upon discovering the same and ascertaining that it was using electric current purchased from the city, permitted the light to remain.

That Ehrke permitted the installation of the neon sign as the superintendent of the electric light plant and system is supported

by the evidence. He refused to remove the pole because Kenyon had spoken to him about using it for the purpose of installing this sign. Theisen went to see Ehrke on the day of the installation. Ehrke testified that he told Theisen the village council might object to the hanging of the sign, in which event the sign would have to come down, but that if he did hang the sign, not to go above the village wires. Ehrke's testimony was contradicted by Theisen's brother, who testified that Ehrke told him that he had told Theisen to go ahead and hang the sign on the pole. A special interrogatory was submitted to the jury for a finding whether Ehrke had told Theisen that if he did go on the pole he should not go above the village fixtures, and this was answered in the negative. On August 1, 1934, Theisen undertook to erect the sign on the pole. He was assisted by one Uttermark, who worked at a near-by filling station. Uttermark helped Theisen raise the bracket from which the sign was to be suspended, up on the pole, but had to leave to service a car at the filling station before Theisen had finished nailing the sign bracket to the pole. There were no eyewitnesses to what transpired after Uttermark left, but the physical facts existing immediately after the accident show that after fastening the bracket by nails Theisen had run a steel cable from the end of the bracket to the top of the pole, where the cable was wrapped around a lag bolt or wood screw which Theisen had driven into the top of the pole. This cable was longer than was required to bridge the distance from the end of the bracket to the top of the pole, and after it was attached to the lag screw an unused portion of some five feet five inches remained. The cable could come in contact with the high tension electric wires only if it was extended straight out horizontally north or south from the pole. If it was permitted to fall down or dangle or extend straight out east or west from the pole there was no danger of such a contact. The last person to see Theisen prior to his fall from the pole was a 14-year old boy who, attracted by a crackling noise, turned and saw Theisen standing on the sign bracket with what appeared to be a ball of fire near his head, and as the boy looked Theisen fell to the ground. He died the following day from burns caused by electric shock. It is reasonably certain that the current

was conducted to Theisen by means of the steel cable which ran from the end of the sign bracket to the top of the pole. Defendant contends that the unused portion of the cable, a piece five feet five inches in length, came directly in contact with the high tension wires, which were four feet from the top of the pole on the north and south sides. Plaintiff claims that the contact could have been produced by a disruptive or "brush" discharge emanating from the high tension wires when the cable was within from two and one-half to three inches or more from the wires and that this is more probably what occurred because evidence of actual contact with the high tension wires, as indicated by copper deposits on the cable, was found at only one place.

■ Plaintiff claims that Theisen was upon the pole for the purpose of hanging the sign by defendant's permission given by its agent, Ehrke. Defendant asserts that Ehrke did not have authority to grant such permission and that he did not in fact grant it and that Theisen was a trespasser when he went upon the pole. The issue was submitted to the jury, which found in favor of plaintiff. The record fails to disclose that Ehrke's authority was ever definitely defined. The evidence does show that Ehrke exercised a general authority to act for the village. He testified that he was superintendent of the light system of the village and had held this office for 17 years, that he hired men and supervised them in the care and maintenance of the light system, that he purchased materials needed for the system, that he did not always receive permission from the council before he erected or changed the location of poles. The recorder of the village testified that the village council had never granted permission to anyone to hang a sign on the pole. This does not tend to prove that Ehrke did not have authority as superintendent to grant permission to use the pole. Acts by a municipal officer in charge of a department are presumed to be in performance of official duty when the acts relate to matters confided to his control and supervision. The officer's general authority is sufficient *prima facie* to establish his authority to act with respect to the particular matter. Kobs v. City of Minneapolis, 22 Minn. 159. General authority to act for the village may be in-

ferred from previous acts of such character and so continued as to justify the inference that the village had knowledge of them and would not have permitted the same if unauthorized. Thayer v. City of Boston, 19 Pick. (Mass.) 511, 517, 31 Am. D. 157; Lee v. Village of Sandy Hill, 40 N. Y. 442; Central Union Tel. Co. v. City of Conneaut (C. C. A.) 167 F. 274. The finding that Ehrke, as the authorized agent of the village, gave Theisen permission is justified by the evidence. Theisen was lawfully upon the pole.

■ Negligence may be found in the failure of defendant properly to warn Theisen of the dangers to which he was exposed in hanging the sign. It is admitted that there were no guards or warning signs on or near the pole. Ehrke claims that he warned Theisen by instructing him not to go above the village fixtures and telling him that the wires above carried 33,000 volts. His claim that he warned him not to go above the village fixtures is eliminated by the special verdict. The warning that the wires carried 33,000 volts made it a question for the jury whether or not the defendant was negligent in the circumstances. Ehrke knew that Theisen was inexperienced as an electrician and that the wires presented an added danger in the form of a "brush" or disruptive discharge with which persons inexperienced in electricity are not familiar. The testimony is that there is an electrical field extending at least two and one-half or three inches from the wires which would give off "brush" or disruptive discharges sufficient to cause death, a fact generally unknown to those unfamiliar with electricity. Ehrke made no mention of this hidden danger to Theisen. It is the duty of one who permits another to come upon his property to exercise due care to warn such person of the risks of hidden dangers to which he will be exposed by coming there pursuant to the permission. Hoppe v. City of Winona, 113 Minn. 252, 129 N. W. 577, 33 L.R.A.(N.S.) 449, Ann. Cas. 1912A, 247; Weber v. J. E. Barr Packing Corp. 182 Minn. 486, 234 N. W. 682; Jordan v. Malden Elec. Co. 244 Mass. 342, 138 N. E. 536; Dunn v. Cavanaugh (C. C. A.) 185 F. 451, 453; Restatement, Torts, § 342. In Hoppe v. City of Winona [113 Minn. 255], we held that there is the duty "to avoid endangering those who might be employed upon * * * the structure" (a toll

bridge which, like the electrical system in this case, was owned by the city in its proprietary capacity), and that such duty was to exercise "care commensurate with the dangerous character of the instrumentality [high tension electric wires], and to adopt such methods as were reasonably practicable to avoid endangering" those so employed. The decedent in that case was employed in painting the bridge by an independent contractor. Because the contractor and the decedent did not know of the hidden perils to those employed about or near the wires of "brush" or disruptive electrical discharges from the same, which wires the city permitted to be attached to the bridge by an electrical company, it was held that the city was under the duty of instructing and warning the decedent—"the danger from this source * * * was concealed * * * and the duty of making it known was upon the city."

It was a question for the jury whether defendant village properly warned Theisen. The warning went to known and obvious dangers, that is, the coming in contact with the wires carrying the electric current. But there was no warning at all as to the hidden danger of "brush" or disruptive discharges. In Dunn v. Cavanaugh (C. C. A.) 185 F. 451, 453, the court said:

"But we think the judge was quite right in leaving it to the jury to say whether the warnings would not be understood by an ordinarily prudent person as referring to actual contact with the wires, and whether they were of such character as to advise him of the danger which actually caused his death."

The jury might find negligence from the failure to warn as to the hidden dangers of "brush" or disruptive discharges even though there was a warning as to the danger of coming in physical contact with the wires themselves. Hoppe v. City of Winona, supra; Jordan v. Malden Elec. Co. 244 Mass. 342, 138 N. E. 536, 537; Dunn v. Cavanaugh, supra; Pennsylvania Utilities Co. v. Brooks (C. C. A.) 229 F. 93; Laudwig v. Central Missouri P. & L. Co. 324 Mo. 676, 24 S. W. (2d) 625; Bowen v. Hall-Baker Grain Co. 228 Mo. App. 332, 67 S. W. (2d) 536, 537. In Jordan v. Malden Elec. Co. the court said [244 Mass. 345]:

"If the engineer or foreman cognizant of the danger, * * * was found to have given the intestate no warning of the concealed risk to which he was exposed; that, even if he did not come in contact with any portion of the mechanism, a current of electricity at a high voltage might jump from a conductor rod constantly charged to his person, and complete the circuit by passing through his body, the defendant's negligence was established."

■ Theisen's contributory negligence was for the jury. He was not experienced in working with electricity, and there is nothing to show that he knew of the possibility of a disruptive or "brush" discharge. There are no eyewitnesses to what transpired immediately before the current was discharged. It must be presumed, until the evidence shows otherwise, that in working on the pole Theisen exercised due care for his own safety. Gilbert v. City of Tracy, 115 Minn. 443, 132 N. W. 752. As said in Staab v. Rocky Mountain Bell Tel. Co. 23 Idaho, 314, 322, 129 P. 1078, 1080, a case involving a death by electric shock:

"Where death was almost instantaneous, as in this case, and no one could see or positively know the cause which precipitated deceased on this live wire, it is the duty of this court to presume that the person who lost his life under such circumstances exercised reasonable care and precaution in an effort to preserve his life and that he did not expose or subject himself to injuries and risks that he might reasonably have anticipated or expected would inflict mortal injuries."

This presumption will yield to proof of contributory negligence, "but the question is always one of fact for the jury, unless the undisputed evidence so conclusively and unmistakenly rebuts the presumption that honest and fair-minded men could not reasonably draw different conclusions therefrom." Gilbert v. City of Tracy, 115 Minn. 443, 444, 132 N. W. 752. No undisputed facts stand out in this record to compel the inference that Theisen was contributorily negligent. Much is made of the fact that Ehrke told Theisen the wires carried 33,000 volts and that one Borseth, who was at first expected to assist Theisen, warned Theisen that they would have to be careful

if they went on the pole. The presumption of due care supposes that Theisen followed the instruction and was careful. The warnings did not charge him with knowledge of the hidden danger of a "brush" discharge. Knowledge that the situation was a dangerous one does not establish contributory negligence as a matter of law. Byars v. Alabama Power Co. 233 Ala. 533, 538, 172 So. 621, 626, in which the court said:

· "If it should be assumed that this information from a fellow employee was sufficient to establish knowledge of the high potential, and that it was dangerous to fool with the wires, the question of contributory negligence of deceased still remained for the jury." See 20 R. C. L. p. 111, § 97.

The only fact that would justify an inference of contributory negligence is that when Theisen tied the sign bracket to the top of the pole he used a steel cable that was some five feet longer than was necessary. What precautions he took to prevent this loose end from coming in contact with the power wires cannot be known. But on the fact alone that he had the extra portion of cable the question of his negligence cannot be taken from the jury. Fairminded men might differ about the subject, and this made the question one for the jury. Hoppe v. City of Winona and Gilbert v. City of Tracy, *supra;* Neumann v. Interstate Power Co. 179 Minn. 46, 228 N. W. 342. In a number of cases with similar facts the question of contributory negligence has been held for the jury. Staab v. Rocky Mountain Bell Tel. Co. 23 Idaho, 314, 129 P. 1078; Ziehm v. United Elec. L. & P. Co. 104 Md. 48, 64 A. 61 (decedent descending a pole and his hand came in contact with wires strung close to the pole); Wilkins v. Water &. Light Co. 92 Neb. 513, 522, 138 N. W. 754 (deceased climbing pole to reach a platform and passing near wires); Sandeen v. Willow River Power Co. 214 Wis. 166, 252 N. W. 706 (persons injured in attempting to pass a derrick under wires); Kerstens v. Pacific Gas & Elec. Co. 3 Cal. App. (2d) 489, 39 P. (2d) 469 (iron worker dragging iron rods near wires); Dunn v. Cavanaugh (C. C. A.) 185 F. 451 (decedent painting powerhouse swung on boatswain's chair near wires and was electrocuted);

Rambo v. Empire District Elec. Co. 90 Kan. 390, 133 P. 553 (decedent climbed up telephone pole and had to pass between electric wires to reach a cable box). To same effect, Commonwealth Elec. Co. v. Rose, 214 Ill. 545, 73 N. E. 780; Swan v. Salt Lake & O. Ry. Co. 41 Utah, 518, 127 P. 267; Illingsworth v. Boston Elec. Light Co. 161 Mass. 583, 37 N. E. 778, 25 L. R. A. 552; Yeager v. Edison Elec. Co. 242 Pa. 101, 88 A. 872.

The questions of defendant's negligence and deceased's contributory negligence were properly submitted to the jury, whose verdict should not be disturbed.

Judgment affirmed.