ISABELLA BIDDLE, *Appellee*, V. THE LEAVENWORTH
LIGHT, HEAT & POWER COMPANY et al., *Appellants*.

No. 17,708.

SYLLABUS BY THE COURT.

1. NEGLIGENCE — *Wrongful Death — Joint Liability — "Prima Facie" Case.* Under the circumstances proven in this case the building and maintaining by two corporations of a line of telephone wires and a line of light, heat and power wires, the latter charged with 2200 volts of electricity, parallel and within ten or twelve inches of each other, is sufficient, *prima facie*, to justify a jury in finding each of such corporations negligent in so maintaining such wires and responsible for such damages as they find resulted therefrom.

2. CONTRIBUTORY NEGLIGENCE—*Assumption of Risk.* The mere fact that a workman, employed by a telephone company, in the discharge of his duty ascends one of the telephone poles in obedience to the orders of a superior officer to make a certain adjustment of the telephone wires, in the performance of which his hand came in contact with the highly charged wire and he was thereby instantly killed, does not, under all the evidence in this case, compel the inference that he was guilty of contributory negligence or that he assumed the risk of injury in performing such labor.

Appeal from Leavenworth district court. Opinion filed July 6, 1912. Affirmed.

*Floyd E. Harper*, of Leavenworth, for appellant The Leavenworth Light, Heat & Power Company.

*J. W. Gleed, J. L. Hunt,* and *D. E. Palmer*, all of Topeka, for appellant The Missouri & Kansas Telephone Company.

*A. E. Dempsey*, of Leavenworth, for the appellee.

The opinion of the court was delivered by

SMITH, J.: Isabella Biddle brought this action against the Leavenworth Light, Heat & Power Company and the Missouri & Kansas Telephone Company to recover damages for the death of her husband. The

plaintiff recovered and the defendants appeal. In, her petition she alleged that the appellants had set poles and maintained wires thereon for their respective uses along a certain public alley in the city of Leavenworth; that the poles of the appellants alternate and that the wires of the respective companies were by them negligently and carelessly strung and maintained parallel and in close proximity with each other, the electric wires being a little above the telephone wires; that at all times the wires of the power company were charged with about 2200 volts of electricity and were defectively and insufficiently insulated, and that at a certain point on the line where "can pole 3" of the telephone company was located, and where the death occurred, the insulation on the wires of the power company had been negligently permitted to deteriorate, become defective, abraded and worn off; all of which facts were known to the appellants or could have been known to them with the exercise of proper care; that while the appellee's husband was in the employ of the telephone company and while in the line of his duty as such employee at the place described and while he was exercising due care on his part, he came in contact with the wires of the appellants so maintained and charged with electricity and received therefrom a shock from the effects of which he instantly died.

The appellants each attacked the petition by motion to make it more definite and certain, and upon the overruling of such motions each filed a general demurrer thereto which was also overruled. Each appellant thereupon separately answered. A jury trial was had, special findings were made, and a general verdict against the appellants jointly for $10,000 damages was rendered. Separate motions for a new trial were made and overruled and judgment was rendered according to the verdict.

The appellants make seventy-four separate assignments of error. The number is confusing, but we will

attempt, without following the numbers consecutively, to consider all of the substantial questions involved.

The petition might have been made more elaborate and definite as to certain facts to which the motions of the appellants are directed, but there was no error in overruling the motions for the reason that it is evident from the situation of the parties that the facts, claimed to be omitted were within the knowledge of the appellants rather than of the appellee. The appellants did not see fit to stand upon the adverse rulings upon the demurrers to the petition, and we think the petition liberally construed, as it should be, states a cause of action.

The evidence and findings of the jury show that the respective wires of the telephone company and the power company were strung in the same line upon alternate poles in such manner that, when taut, the wires were only ten to twelve inches apart and that the wires of the power company were constantly charged with about 2200 volts of electricity. It also appears that the telephone company had men constantly employed to remedy interruptions, called "troubles," in the operation of its wires and it is apparent that such "troubles" generally could be remedied only by ascending the telephone poles, and that in so doing the men would be brought in close proximity to the charged wires of the power company; that in damp weather, such as existed at the time of the accident in question, it appears that no known insulation of a highly charged wire is a sufficient protection from injury to any person coming in contact therewith. The evidence shows that the wires of the power company were insulated by a rubber covering, which is as perfect insulation as science and experience have developed, but that one wire, which had sagged about five inches and caught upon a glass upon the telephone pole, had the insulation burned or rubbed off for a space of about an inch or an inch and a half.

It is agreed that the deceased came to his death by his hand coming in contact with the wire of the power company, but whether it was at the point where the wire was denuded was not shown. There is evidence that, in the condition of weather which existed at the time, if a person's body were "grounded," that is, brought in contact with a wet pole or wire extending into the ground, that contact with the charged wire, even if the insulation covered the wire, would be extremely dangerous.

If the jury regarded these facts, of which there was at least some evidence, as established, as from the verdict they evidently did, they were justified in finding that each of the appellants was negligent in constructing and maintaining the wires in the relative positions described; that some such accident should have been anticipated from the situation and guarded against. The proven fact that the wires of the power company were, soon after the accident, stretched upon poles five feet higher than at the time of the accident and that the telephone wires remained upon the same poles as before is some evidence that the companies knew how to avoid the danger and knew that the previous position of the wires was dangerous.

The answer set up the defense of contributory negligence, and if there was a *prima facie* case of negligence on the part of the appellants the burden of proving contributory negligence on the part of the deceased devolved upon them. How the hand of the deceased happened to come in contact with the charged wire is not disclosed by the evidence. No one saw him at the moment of the accident. The contact and death were instantaneous. At the time of the accident the deceased stood with one foot upon a bolt inserted in a telephone pole and the other leg thrown over a guy wire extending from near the top of the pole to the ground, thus making his body "grounded," as it is called, both through the guy wire and through the wet

telephone pole, there having been a heavy rain the night previous to the accident.

The evidence shows that the deceased was an experienced man in the business in which he was engaged; that he had been in the employ of the telephone company fourteen years, four years of which he was foreman of the linemen, and had also been one year in the employ of the power company as an arc-light trimmer. Both instinct and reason impel every human being to self-preservation and to the avoidance of danger, and these well-known facts compel the presumption that the deceased used reasonable care to avoid injury to himself. And, in the absence of evidence to the contrary, this presumption was sufficient to justify the jury in finding that the deceased was not guilty of contributory negligence. It is agreed that the accident resulted from the hand of the deceased coming in contact with a wire of the power company. The wire sagged about five inches, thus bringing it within five to seven inches of the telephone wire. When the sagging occurred is not shown otherwise than inferentially in this that the service on the telephone wires was interrupted only on the morning of the accident and unsuccessful efforts had been made by employees of the telephone company to discover the cause of the interruption. The trouble was later located in the vicinity of where the accident afterwards occurred.

By the direction of the city manager the deceased had been sent early in the afternoon to wire around the interruption so as to resume the service. Very shortly before the accident he discovered that a wire of the power company was caught under a glass on a telephone pole and he had released it. Immediately thereupon communication over the telephone wire could be resumed. He had telephoned to the office of the telephone company of the discovery of the interruption and almost immediately thereafter the shock occurred. It was primarily the duty of the power company to

have discovered and removed this interruption.   Neither
the telephone company nor the deceased knew what
the trouble was nor the danger of discovering and re-
moving it until about the moment the accident occurred.
It can not be said therefore that the deceased knew and
assumed the risk of the danger that resulted fatally
to him.   The cause of the injury therefore must be as
alleged in the petition and as directly or inferentially
found in the verdict, that the appellants were both
guilty of negligence in stringing and maintaining their
respective wires in such close proximity.

It is said that the telephone company erected the
poles and stretched their wires first and that the power
company afterwards erected their poles and stretched
their wires, and that therefore the telephone company
is not responsible for the proximity of the wires.   Each
of the companies was equally entitled to the use of the
alley for the purpose of setting its poles and stretching
its wires, yet on the principle that one should so use
his own property as not unnecessarily to injure the
rights of others it could hardly be contended that the
telephone company, in view of the evident danger to
its employees in the discharge of their duties, could
not have prevented the power company from string-
ing its wires in such close proximity to the telephone
wires.   And from the fact that this was not done, the
jury may have rightly inferred that the stringing and
maintaining of the wires of the power company in
the proximity shown was with the acquiescence and
consent of the telephone company, and it was equally
the fault and negligence of each that the wires were so
maintained, and each was equally responsible for the
injury that resulted therefrom.

The special findings of the jury and the general
verdict were all in favor of the appellee and, without
adverting to each objection separately, we have con-
sidered them all and believe that such special findings

39—87 KAN.

and verdict were justified by the evidence, and that the court was justified in overruling the motions to set aside any of such findings and in refusing to grant a new trial.

The judgment is affirmed.