# SWAN v. SALT LAKE and OGDEN RAILWAY CO., et al.

No. 2347.   Decided September 28, 1912 (127 Pac. 267).

1. ELECTRICITY—INJURY TO LINEMAN—JURY QUESTIONS.   In an action for injury to a telephone lineman caused by defendant electric company maintaining a high voltage wire dangerously near the telephone company's wire, questions of negligence and contributory negligence *held*, under the evidence, for the jury.   (Page 526.)

2. ELECTRICITY—NEGLIGENCE—EVIDENCE.   In determining whether an electric company was negligent in maintaining a high-voltage wire near a telephone wire, the jury could consider the nature of the current carried by the wires, the proximity of the lines, the lack of necessity for dangerous proximity, the ease with which the danger could be avoided, and the length of time the danger continued.   (Page 526.)

3. APPEAL AND ERROR—REVIEW—MATTERS NOT IN ISSUE.   An issue not raised by the pleadings is not reviewable.   (Page 529.)

4. ELECTRICITY—INJURY TO LINEMAN—DEFENSES.   Defendant electric company cannot avoid liability for injury to a telephone lineman, caused by proximity of defendant's high voltage wire to the other company's wire, by showing that, when the accident occurred, plaintiff was assisting in stringing a wire on the telephone company's pole not authorized to be strung by the ordinance under which the poles were maintained.   (Page 529.)

5. APPEAL AND ERROR—HARMLESS ERROR—ADMISSION OF EVIDENCE.   In an action against an electric company for injury to a telephone company's lineman caused by a dangerous proximity of wires of the two companies, any error in admitting testimony concerning a conversation and a letter between persons not employed by defendant as to such proximity was harmless where defendant had constructive notice of that condition, and the evidence related to a matter not in dispute.   (Page 531.)

6. WITNESSES—QUESTIONS—ASSUMING FACTS.   In an action against an electric company for injury to a telephone company lineman caused by dangerous proximity of wires of the two companies, questions asked witnesses for defendant to show the duty and practice of linemen in taking precautions for their safety were properly excluded, where they infringed the jury's province, by assuming that plaintiff was chargeable with notice of the condition of the wires.   (Page 531.)

7. EVIDENCE—CONCLUSIONS OF WITNESS—ADMISSSIBILITY. In an action against an electric company for injury to a telephone lineman caused by a dangerous proximity of wires of the two companies, it was not error to exclude testimony as to whether the construction was dangerous; that being the ultimate question for the jury. (Page 532.)

8. TRIAL—INSTRUCTIONS. In an action against an electric company for injury to a telephone company lineman caused by dangerous proximity of wires of the two companies, it was not error to instruct that defendant was not bound to furnish plaintiff a reasonably safe place to work; the court having told the jury just what he must prove in order to recover. (Page 533.)

9. TRIAL—INSTRUCTIONS—REFUSAL. Instructions not applicable to the theory on which a case is tried are properly refused. (Page 533.)

10. TRIAL—INSTRUCTIONS. In an action against an electric company for injury to a telephone company lineman caused by dangerous proximity of wires of the two companies, it was not error to instruct that any act of defendant, lawful or otherwise, and whether negligent or otherwise, which endangered plaintiff, rendered defendant liable for his injuries, where the charge as a whole made it clear that negligence must be found. (Page 533.)

APPEAL from District Court, Second District; *Hon. J. A. Howell,* Judge.

Action by George W. Swan against the Salt Lake and Ogden Railway Company and others.

Judgment for plaintiff. Defendant named appeals.

AFFIRMED.

*Pierce, Critchlow & Barrett* for appellants.

*A. W. North, F. K. Nebeker* and *E. M. Bagley* for respondent.

RESPONDENT'S POINTS.

Appellant was negligent both in placing its high tension wire in such dangerous proximity to the telephone pole and

in its continued maintenance thereafter, and was not only liable for the original wrong in so placing it, but was equally liable for permitting it to so remain. It is immaterial whether appellant or the telephone company was the prior or junior occupant of the zone. It is equally immaterial which company actually created the proximity in the first instance, because, if dangerous, it was the duty of both to remedy it regardless of which had brought it about. (*San Ontonio G. & E. Co. v. Badders* [Tex.], 103 S. W. 229; *Herbert v. Lake Charles I. L. & W. Co.* [La.], 35 So. 731; Atl. *C. S. R. Co. v. Owings* [Ga.], 25 S. E. 377; *Gentzkow v. Portland R. Co.* [Ore.], 102 Pac. 616; *Overall v. Louisville E. L. Co.* [Ky.], 47 S. W. 443; *Brown v. Edison E. I. Co.* [Md.], 45 Atl. 182, and cases cited; *Drown v. New England T. & T. Co.* [Conn.], 66 Atl. 801; *McKay v. Southern B. T. & T. Co.* [Ala.], 19 So. 695; *Western Union T. Co. v. Griffith* [Ga.], 30 S. E. 420.)

Where people have been injured in consequence of coming in contact with permanent structures or other objects negligently permitted to be and remain needlessly close or in dangerous proximity to their place of work they have recovered damages, and in every case the question of plaintiff's care or lack of it was held properly submitted to the jury. (*Pidcock v. U. P. R. Co.*, 5 Utah, 612, 19 Pac. 191; *Saunders v. S. P. Co.*, 13 Utah, 275, 44 Pac. 932; *Nelson v. S. P. Co.*, 18 Utah, 244, 55 Pac. 364; *Leach v. O. S. L. R. Co.*, 29 Utah, 285, 81 Pac. 90, 110 Am. St. Rep. 708; *Black v. R. M. Bell Tel. Co.*, 26 Utah, 451, 73 Pac. 514; *Speight v. R. M. Bell Tell. Co.*, 36 Utah, 482, 107 Pac. 742.)

The servant has a right to rely upon it that his master has taken reasonable precautions for his safety, under such circumstances that the work may be done without extra hazard or peril to himself. (*Harrison v. D. & R. G. Ry.*, 7 Utah, 523, 27 Pac. 729.)

Contributory negligence will not in all cases, be imputed, as a matter of law, to a person who receives an injury from a danger simply from the fact that it might have been seen, because the nature of his duties, or the surrounding circum-

stances, may be such as to distract his attention to other objects. (1 Thomp. Neg., sec. 189; *Webb v. Heintz* [Ore.], 97 Pac. 753.) And, under such circumstances, the question is for the jury, and not for the court. (*Illingsworth v. Boston Electric Light Co.*, 161 Mass. 583, 37 N. E. 778, 25 L. R. A. 552; *Mahan v. Newton & Boston Street Ry. Co.*, 189 Mass. 1, 75 N. E. 59; *Reagan v. Boston Electric Light Co.*, 167 Mass. 406, 45 N. E. 743; *Commonwealth Electric Co. v. Rose*, 214 Ill. 545, 73 N. E. 780; *Knowlton v. Light Co.*, 117 Iowa, 451, 90 N. W. 818; *Paine v. Electric Illuminating, etc., Co.*, 64 App. Div. 477, 72 N. Y. Supp. 279; *Stevens v. Company*, 73 N. H. 159, 60 Atl. 848, 70 L. R. A. 119; *Gentzkow v. Portland Ry. Co.*, 102 Pac. 615; *Ladlow v. Oklahoma G. & E. Co.*, 119 Pac. 250.)

FRICK, C. J.

Respondent recovered a joint judgment against the defendant Home Telephone & Electric Company and the Salt Lake & Ogden Railway Company, both Utah corporations, for damages for personal injuries which he sustained by reason of the alleged negligence of said corporations. The railway company alone appeals, and will hereafter be called appellant, while the other defendant will be designated as "telephone company."

The allegations of negligence against appellant in substance are that on and for a long time prior to the 22d day of July, 1910 (the day of the accident), appellant had negligently and carelessly placed and maintained on certain poles along the east margin of a certain highway in the town of Kaysville, Davis County, Utah, certain wires which continuously carried a dangerous quantity of electricity, to wit, 40,000 volts; that said wires were placed in close and dangerous proximity to the poles and wires of the telephone company, to wit, "within about one foot thereof;" that the wires of appellant aforesaid were by it negligently and carelessly suspended in such proximity to the poles and wires of the telephone company that appellant's wires charged with said quantity of electricity were "extremely dangerous to the

safety and lives of the employees of the defendant Home Telephone Company in climbing and working on its poles." It is further alleged that respondent was an employee of the latter company, and that appellant had full knowledge of the dangerous condition of the wires aforesaid, and that, notwithstanding its knowledge of said dangerous condition, it negligently and carelessly permitted the same to exist.

The evidence produced on behalf of the respondent is, in substance, as follows:

In January, 1909, the telephone company constructed a line of telephone poles along the east margin of a public street or highway in Kaysville, an incorporated town in Davis County, Utah. The poles in question were twenty-five feet in length and were placed four feet in the ground. A crossarm was attached to each pole about four feet from the top and a mortise or gain was cut into each pole higher up and within about seven or eight inches from the top in which an additional crossarm could be fastened. Upon the lower crossarm telephone wires were strung soon after the poles were erected, and on the upper arm on the west side of the poles two larger wires for the purpose of transmitting electricity for light and power purposes had been strung some time between January and May, 1910. A third wire to be used for the same purpose was being strung on the upper crossarm at the time of the accident, July 22, 1910. In January, 1910, a year after the telephone poles had been erected, the appellant also erected poles upon which it intended to, and did, string high-tension wires for the purpose of transmitting electricity to be used in propelling its cars on its line of railway between Salt Lake City and Ogden, which up to that time had been transported with locomotive engines operated by steam power. Appellant's poles were forty feet long, and were set six feet into the ground. To the latter poles were attached two crossarms one near the top and the other some six or seven feet lower down. On the lower crossarm there were two wires and one on the upper carrying 40,000 volts of electricity to be used for the purpose aforesaid. The poles of appellant were thus from

twelve to fifteen feet higher above the ground than those of the telephone company and the crossarms and wires on both lines of poles were also approximately that distance apart. The line of poles of the telephone company at the point of the accident and northerly thereof ran in a northwesterly direction, while the appellant's pole line ran more nearly in a northerly direction, so that the two lines appeared in the form of an acute angle like the letter V as they approached each other from the north, while in going south the lines again diverged, the appellant's line veering to the east of the telephone company's line which continues on in a southerly course. The two lines run in close proximity only for a short distance, and there was but a single pole on which the wires approached so close as might make them dangerous to anyone ascending the pole. At the point of the accident the poles of both companies practically constituted one line with the poles of the two companies alternating for a short distance. At this point appellant had placed a pole which was considerably shorter than its other poles while the telephone company's pole nearest to said short one was placed upon somewhat higher ground, so that one of the high-tension wires on the lower crossarm of appellant's line of poles was brought down, as the witnesses say, to from seven to eleven inches from the top of one of the telephone poles, or from sixteen to eighteen inches from the upper crossarm attached to the telephone pole. This condition had existed for at least sixty days prior to the accident, during all of which time appellant's wires were charged with the voltage aforesaid, and appellant during all of that time continuously operated its cars on its line of railroad in open view of the poles and wires placed as aforesaid. Some time before the accident, an employee of the telephone company who was in charge of its line directed the attention of the superintendent of the construction company that was constructing apppellant's high-tension line to the proximity of appellant's wires to those of the telephone company at the point aforesaid. The same employee thereafter, and before the accident, also wrote a letter to said superintendent, ad-

dressed in care of appellant at its offices in Salt Lake City. The respondent for about two months before the accident had been in the employ of the telephone company as an "apprentice lineman," and during that time was engaged in "trimming trees and stringing wires" north of the place of the accident.

On the morning of the accident respondent, with three others, was engaged in stringing a third power and light wire on the top crossarm of the telephone line. As before stated, the telephone poles were placed in a public highway or street in Kaysville along the easterly margin of said street, and the wire was being reeled off along the west side of the poles in the street. One of the men would thus pick up the wire and while holding it in his hand would, by means of climbers attached to his feet, ascend the telephone pole and carry the wire around the westerly edge of both the lower and upper crossarms, and place the wire loose upon the upper crossarm to be fastened thereto later. The three men were thus climbing the poles alternately, and in doing so each one climbed every third pole as they approached the point of the accident. The respondent had never before been on the poles at or near the point of the accident, but in stringing wires on the morning in question noticed that the poles of appellant's line were running along easterly of the telephone line, and that they were considerably higher, and that the wires thereon which he supposed were carrying a high voltage were also ten to fifteen feet above the wires of the telephone company upon which he was working. In taking the wire up the poles as aforesaid, respondent did not notice that he was ascending a pole which was standing near one shorter or lower than appellant's other poles. He ascended the pole in question on the east side so as to avoid the morning sun from affecting his eyes. In going up the pole, his attention, as he says, was directed to his feet or climbers to avoid placing them into the season cracks in the pole, which, if done, might cause him to lose his footing and fall to the ground as he had seen others do in placing a climber point into one of the season cracks. As respondent ascended the pole, appel-

lant's high-tension wire was back of or over him. When he had reached the lower crossarm of the telephone pole, he carried the wire around the west end thereof, then ascended higher, and stood upon the crossarm with his body leaning forward and to the west, and in that position took the wire which he held in his hand around the west end of the upper crossarm, and, after having done so, he straightened up to carry the wire over the top of the telephone pole, and in doing so, and without having his body come in actual contact with appellant's wire which was charged with 40,000 volts a flash of light or flame of fire was by one of his associates seen to pass from said wire to the back of respondent's body about the shoulders, and the force of the shock caused him to be pitched forward and thrown from the pole into the street, and by reason of the fall and shock he received serious and permanent injuries. It is also made to appear that a wire charged with 40,000 volts of electricity is exceeding dangerous to life, and that contact with or so near an approach to the wire as practically amounts to a contact usually means certain death. It was also shown that there was absolutely no necessity or cause for placing a lower pole at the point where the telephone and high-tension lines met or for placing or leaving the high-tension wires in such close proximity to the telephone pole in question and the wires thereon. It was also made to appear that there were two ways in which appellant could have avoided the dangerous condition of its high-tension wires. One was by insulating the wire for a few feet on either side of the telephone pole, and the other by putting in a pole of the same length as its other poles, and in that way elevate its wire, and thus place it at a safe distance from the telephone pole.

Upon practically the foregoing state of facts, the appellant moved for a nonsuit in the lower court, upon two grounds: (1) That no actionable negligence on the part of appellant, had been shown; and (2) because it was made to appear that the respondent was guilty of contributory negligence as a matter of law.

Many reasons are assigned why the evidence is insufficient to justify a finding of negligence against the appellant. It is, in effect, contended that all that the respondent has to rely upon to establish his case is the doctrine of *res ipsa loquitur;* that is, that something unusual happened which caused an injury to him. This doctrine, it is strenuously insisted, is not applicable to a case like the one at bar, and hence cannot be invoked by respondent. A sufficient answer to appellant's contention in this behalf is that neither in the trial court nor in this court has respondent either invoked or relied upon the maxim. No further comment is therefore necessary.

The evidence in this case showing appellant's acts and conduct in our judgment is, however, clearly such as to admit of conflicting inferences with respect to whether such acts and conduct, under all the circumstances, constituted negligence or not; and hence it was proper to submit the whole evidence to the jury to pass on. The jury in passing on the question of appellant's negligence had a right to consider (1) the nature and character of the electric fluid carried by the wires and the effect thereof on human life when coming in contact with or very near to them; (2) the proximity that the poles and high-tension wires were placed to those of the telephone line; (3) the fact that there was no necessity whatever for placing such a dangerous agency in such close proximity to the telephone pole; (4) that it was a very easy matter to remove the dangerous wires by simply replacing the short pole with one of the same length as appellant's other poles, or by insulating the high-tension wires for a short distance each way from the telephone pole; and (5) the length of time that appellant permitted its high-tension wires to remain in the condition they were at the point where the short pole was placed after it was charged with knowledge of their condition and proximity to the telephone pole. The Supreme Court of California in *Giraudi v. Electric Imp. Co.,* 107 Cal. at page 124, 40 Pac. at page 109, 28 L. R. A. 596, 48 Am. St. Rep. 114, in passing upon the question of negligence in a somewhat similar case, says:

"Defendant was using a dangerous force, and one not generally understood. It was required to use very great care to prevent injury to person or property. It would have been comparatively inexpensive to raise the wires so high above the roof that those having occasion to go there would not come in contact with them. Not to do so was sufficient proof of negligence to justify the verdict."

In *Choctaw, Oklahoma, etc., R. R. Co. v. McDade*, 191 U. S. at page 67, 24 Sup. Ct. at page 25, 48 L. Ed. 96, the Supreme Court of the United States, in referring to the fact that, where an easy remedy is practicable to avoid a dangerous agency, such fact may be considered in determining negligence, adopts the following language of the Circuit Court of Appeals, namely:

"It is so simple a task, one so devoid of all exigencies of expense, necessity, or convenience, so free of any consideration of skill, except that of the foot rule, and so entirely destitute of any element of choice or selection that not to make such a construction safe for the brakeman on the trains is a conviction of negligence."

In the case at bar it did not even require the foot rule. All that was necessary was to displace the short pole with one of the regular length, which everyone knows could have been done almost as easily and as quickly as to put in place one of the poles in the first instance. If it be said that neither one nor all of the foregoing acts and omissions constituted negligence as a matter of law, yet it must also be said that those acts and omissions cannot as matter of law be declared free from negligence. The question of negligence was therefore to be determined by the jury. To this effect are all of the authorities, among which we refer to the following: *Dow v. Sunset, etc., Co.,* 157 Cal. 182, 106 Pac. 587, and *Id.* (Cal.), 121 Pac. 379; *Herbert v. Lake Charles I. L. & W. Co.,* 111 La. 522, 35 South. 731, 64 L. R. A. 101, 100 Am. St. Rep. 505; *Atl. Con. St. Ry. Co. v. Owings,* 97 Ga. 663, 25 S. E. 377, 33 L. R. A. 798; *Gentzkow v. Portland Ry. Co.,* 54 Ore. 114, 102 Pac. 616, 135 Am. St. Rep. 821; *Overall v. Louisville El. L. Co.* (Ky.), 47 S. W. 443; *Brown*

*v. Edison El. I. Co.,* 90 Md. 400, 45 Atl. 182, 46 L. R. A.
745, 78 Am. St. Rep. 442; *Olson v. Nebraska Tel. Co.,*
85 Neb. 331, 123 N. W. 423, 133 Am. St. Rep. 660; and
*Id.,* 87 Neb. 593, 127 N. W. 917; *Drown v. New England
T. & T. Co.,* 80 Vt. 1, 66 Atl. 801; *Biddle v. Leavanworth
L. H. & P. Co.,* 87 Kan. 604, 125 Pac. 51. The last case
cited was decided since the case at bar was submitted, and,
in view of the facts in that case, the decision upon the ques-
tion of negligence and contributory negligence is decisive of
the same questions involved here.

Nor is appellant's intention tenable, that it was not re-
quired to anticipate and guard against anyone going to the
top of the telephone pole, because, when its high-tension line
was constructed, there was only the lower crossarm on the
telephone poles. The answer to this is that there was a mor-
tise or gain cut into the upper end of the telephone pole at
that time which was intended for an additional crossarm.
This was in and of itself notice that another crossarm might
and probably would be attached to the telephone pole at some
future time. The matter was, however, not left to mere prob-
ability or conjecture since the upper crossarm with two addi-
tional wires were in fact placed on the telephone poles, in-
cluding the one in question, at least several months prior to
the accident. During all of that time appellant operated its
trains daily past and in plain view of the telephone poles,
including the one upon which respondent was injured, and
it appears from the evidence that the employees on the trains
actually observed the conditions of the poles and wires. Ap-
pellant was thus apprised of the fact, not only that some one
must have ascended the telephone pole in question since it was
erected, but also that in all probability it would be neces-
sary for some one for some purpose to ascend the pole again,
and that this might occur frequently and at any time. It
was thus made apparent to appellant as well as to others that
those high-tension wires, charged as they were with a most
deadly and destructive agency, not only might, but in all
probability would, endanger the life of any one who might
be required to ascend the telephone pole. For these reasons

and others, appellant was required to foresee that its wires, charged as thy were, might cause injury to some one, and, to say the least, the question was for the jury to say whether it should have guarded against such an emergency or not.

The question of contributory negligence does not require lengthy discussion. Keeping in mind the fact that respondent had never been on the telephone pole before, that he was approaching it from the north, and that all appellant's poles of its high-tension line to the north were from twelve to fifteen feet longer than the telephone poles, that respondent did not know of the short pole nor of the proximity of appellant's high-tension wires to the wires on the upper crossarm of the telephone pole, or to the top of that pole, and, finally, that in ascending the telephone pole his attention was directed to getting a sure footing and thus did not notice the proximity of the wires above him—all these things and perhaps others were matters from which the jury were justified in arriving at the conclusion that respondent was not guilty of contributory negligence.

In addition to the assignments just passed on there are also about eighty others. Counsel have divided those into groups, but even in that form we cannot, without extending this opinion to an unnecessary length, consider them at length. It is argued that respondent did not show that the telephone company had a right to place any wires on the upper crossarm of its poles, and hence he failed to show that he was where he had a right to be. Indeed, counsel introduced an ordinance of the Town of Kaysville, in which it was provided that the telephone company might string telephone wires only on its poles. Sufficient an-    **3, 4** swer to counsel's contention, however, is that it raised no such issue in the pleadings. Assuming, however, that there was such an issue, we think it does not lie in appellant's mouth to say who is and who is not a trespasser on poles erected in a public highway. Respondent at no time trespassed on appellant's property, and, although it were conceded that the telephone company was exceeding its rights

in stringing wires on its poles at the time of the accident, yet that was a matter to be settled between the Town of Kaysville and that company. Appellant cannot excuse its acts either of commission or omission by pointing to the fact that the telephone company was transcending its rights or powers in stringing wires on the telephone poles. Besides, there is not a particle of evidence that appellant knew or was induced to act or remain inactive because of the alleged lack of authority of the telephone company. If therefore it had no effect upon the acts or conduct of the appellant it is immaterial what the telephone company's rights were. It must at least be conceded that the respondent was where he had a right to be so far as appellant is concerned. We think, therefore, that, under all the circumstances, appellant could not with immunity create a dangerous condition so near the telephone poles of the telephone company as to endanger the lives of its employees whatever the latter company's rights in the street may have been. The telephone company was given the right by the Town of Kaysville to place and maintain its telephone poles in the street, and, if it strung one or more wires thereon without authority, it was a matter of which a stranger had no right to complain, or behind which he can shield himself from the consequences of his unlawful acts or conduct. The following authorities dispose of the question under consideration against appellant's contention: Ladow v. Oklahoma Gas & El. Co.. 28 Okl. 15, 119 Pac. 250; Olson v. Nebraska Tel. Co., supra; Mahan v. N. & B. St. Ry., 189 Mass. 1, 75 N. E. 59, 60; Commercial El. L. & P. Co. v. City of Tacoma, 17 Wash. 661, 50 Pac. 592.

It is also insisted that the court erred in admitting in evidence a certain conversation between the manager of the telephone company and one Kline, who was the superintendent of the construction company that built appellant's high-tension line. It is alleged that Kline was not an employee of appellant, and hence it was error to admit a conversation which related to the dangerous proximity of appellant's high-tension wires to the wires on the telephone poles; fur-

ther, that the court erred in admitting a letter written by the manager aforesaid to said Kline which related to the same subject. The conversation occurred and the letter was written sixty days or more before the accident. It appears from the record that the court strictly limited both what was said in the conversation and in the letter to the question of notice. That is, that the jury could consider the evidence in question but for one purpose, namely, that appellant was apprised of the proximity of its high-tension wire to those of the telephone company. Assuming, without deciding, that appellant's objections to the admission of the evidence were sufficient to raise the question, and further, that the court erred in admitting the evidence objected to so limited as aforesaid, yet appellant would not thereby have been injured in a substantial right for two reasons: First, Because appellant had for months before the accident operated its daily trains past the point in question, and in plain view of its short pole and the condition of its high-tension wires thereon. In view of this, appellant, under all the authorities, was charged with knowledge of the condition of its poles and wires as a matter of law. If this be so, then appellant could not have been injured by merely offering proof against it as a fact that which it was bound to know as a matter of law, and this would be so, although the evidence by which the knowledge was shown was improperly admitted. Second. Because both the conversation and the letter related to a matter that was not in dispute. At the trial no one questioned the fact that the poles and wires of the telephone company and those of appellant were in fact in close proximity and that appellant caused them to be so, and that is really all that was referred to by the manager of the telephone company in communicating with Mr. Kline.

It is next insisted that "the court erred in refusing to admit testimony offered by appellant as to the duty and the practice of linemen in taking precautions for their safety." We have carefully examined the proffered testimony on this point. Without now passing upon

the question of admitting testimony directed to the practice of and care exercised by experienced linemen in working on poles where live high-tension wires are in close proximity to said linemen, we are of the opinion that the court committed no error in sustaining the objections to all of appellant's questions asked upon the point in question for the following reasons: All of the questions objected to either assumed that respondent actually knew the condition of the wires and their proximity to the telephone poles and wires, or that he was bound to know these things as a matter of law, before and at the time he ascended the pole in question. Counsel, therefore, assumed in their questions the very fact that was for the jury to determine, namely, whether respondent knew or under all the circumstances should have known or should be charged with knowledge of the danger he was about to incur in ascending the pole in question. The law does not require anyone to take particular precautions against a danger the existence of which he is not required as a matter of law to know, and does not know. If respondent did not know of the dangerous condition of the wires, and he positively testified that he did not, and if he was not charged with knowledge thereof as a matter of law, then, as to him, the dangerous condition did not exist, and hence his conduct could not be compared with the conduct of those who are aware of a dangerous condition, and who come in proximity therewith with full knowledge thereof. The test, therefore, that counsel sought to apply to respondent, was under the circumstances of this case, not a proper nor a fair one; and the court, for the reasons given, committed no error in excluding the proffered testimony.

It is further argued that "the court erred in refusing to permit witnesses to testify as to whether the construction complained of by plaintiff (respondent) was, as a matter of fact, dangerous." We are clearly of the opinion that, in view of the facts and circumstances of this case, the court did not err in refusing the proffered testimony. All the facts were before the jury, and it was for them to say whether the construction was safe or dangerous. We

can conceive of no reason why it required expert testimony to determine whether a wire charged with 40,000 volts of electricity, which is by all conceded to be a most dangerous agency when coming in contact with or in very close prox-imity to a living being, is, under a certain state of facts, dangerous or not. There was nothing occult nor mysterious about the construction, nor was there anything which required special skill or knowledge to determine the ultimate question whether the construction in question was dangerous or otherwise when once the facts were produced in evidence. The court permitted the appellant to fully develop its theory of the accident and the cause thereof. It was permitted to develop every fact from which the jury might arrive at a just conclusion with respect to its own conduct, and also that of respondent. The proffered evidence was of that character which, if permitted, would have substituted the conclusions of witnesses for that of the jury. This would have been improper, and no amount of argument can make it otherwise.

It is also contended that the court erred in refusing appellant's request to charge the jury that it was under no duty to furnish respondent a reasonably safe place to work. No doubt such is the law, but the court told the jury in explicit terms just what facts had to be proven in order to hold appellant responsible for respondent's injuries. This was sufficient. Besides, the case was not tried upon such a theory; and hence it was not necessary to inform the jury upon questions of law not applicable to the case.

It is also insisted that the court erred in charging the jury that any act of appellant "lawful or otherwise and whether negligent or otherwise which endangered" the respondent rendered appellant liable for his injuries. We have carefully examined the court's charge, and we can find nothing in it from which liability on the part of appellant might be inferred, as contended by counsel, although its acts and conduct did not amount to negligence as that term is defined in the charge. Upon the contrary, we are convinced that, taking the charge as a whole, the case was fully and fairly submitted to the jury. The jury were

admonished over and over again that, unless appellant's negligence as defined in the charge was shown by a perponderance of the evidence, their verdict must be in its favor.

There are other assignments relating to the refusal of the court to charge as requested. The matters covered by the requests, when proper, were, however, sufficiently covered by the court's general charge.

A few other questions are argued with respect to the admission or exclusion of certain evidence and the legal affect thereof, but all of those we have already sufficiently covered by what has been said.

A careful scrutiny of the entire record constrains us to hold that the case was fully and fairly tried and submitted, and that there is nothing disclosed which would authorize us to interfere with the verdict of the jury or the rulings of the court.

The judgment is therefore affirmed, with costs to respondent.

McCARTY, J., concurs.


STRAUP, J. (concurring).

I concur. Objections were sustained to more than forty different questions propounded by appellant to different witnesses called in its behalf. The questions related to various subjects, the manner of prosecuting the work, the care or negligence of the respondent and the appellant, and to dangers attendant upon the work. I think it was proper to show the manner in which the work was done and in which such character of work generally was done under similar circumstances by those engaged in the business, and the facts and conditions tending to show the existence or nonexistence of danger incident to the business and naturally attendant upon or connected with such prosecutions. Some of the questions relating to these subjects may not have been improper, but, as to those I think appellant was otherwise permitted to fully develop its theory in such particular. Many of them embraced hypotheses submitted both to the lay and expert witnesses calling for opinions or conclusions either with respect

to the care the respondent ought to have exercised in the performance of his work in safeguarding himself against accident and injury, or as to whether he, in the exercise of proper care, could have performed the work in which he was engaged with reasonable safety under the conditions assumed. Among others is the one:

"State whether it would be in accordance with the ordinary and common duties of a lineman, as understood and practiced in your profession, if, in the presence of poles and wires carrying currents with the nature of which he was not familiar, he placed himself in a position where he might come in contact with such wires."

It is readily seen that this called for an opinion or conclusion of fact upon which the decision depended, and for that reason was improper. While all of the questions were not as objectionable as this, yet most of them were calculated more or less not to enlighten the jury on matters presumably not within their knowledge and upon which they presumably were incapable of forming an accurate judgment, but to call for the opinion or conclusion of the witness of some ultimate fact upon which the decision depended. Questions which were not freighted with such objectionable matter were otherwise permitted to be answered, and the facts and conditions embodied therein allowed to be shown. And upon these grounds alone I think the rulings sustaining objections to the questions ought to be upheld.