No. 20,933

MAY LEWIS, *Appellee*, v. FORD F. HARVEY and ROBERT J. DUNHAM, as Receivers for the METROPOLITAN STREET RAILWAY COMPANY et al., *Appellants.*

### SYLLABUS BY THE COURT.

1. NEGLIGENCE—*Death from Electric Wire—Demurrer to Evidence Overruled.* In an action to recover damages for the death of one person caused by the negligence of another, where several acts of negligence are charged, and the evidence tends to prove one of those acts, a demurrer to the evidence should be overruled.

2. SAME — *Death from Electric Wire — Unprecedented Flood — "Act of God"—Question for Jury.* In an action under sections 419 and 420 of the code of civil procedure, where the defense is that the deceased met his death by an "act of God," and there is evidence to sustain that defense, and also evidence to show that the death was caused by the negligence of the defendant, the determination of the cause of the death becomes a question of fact for the jury.

3. SAME—*Evidence—No Prejudicial Error.* The admission of the evidence of an experienced telephone lineman, that electrical wires will break in a certain manner, was not prejudicial error.

4. SAME—*Electric-light Wires—Highest Degree of Care in Maintaining Them.* Where electric street-railroad wires, electric-light wires, telephone wires, and telegraph wires cross each other, those maintaining them are bound to use the highest degree of care, commensurate with the danger occasioned thereby, by the use of such appliances, devices, and precautions as are practicable, to prevent contact of the wires in the event that any of them should break and fall.

43—101 Kan.

5. SAME—*Trial—Instructions.* The instructions have been examined and are found not erroneous.

Appeal from Wyandotte district court, division No. 1; ED-WARD L. FISCHER, judge. Opinion filed November 10, 1917. Affirmed.

*R. J. Higgins, O. L. Miller, C. A. Miller, John E. McFadden,* and *Oliver Q. Claflin,* all of Kansas City, *L. R. Gates, Sanford B. Ladd, Charles E. Small,* and *Edwin W. Small,* all of Kansas City, Mo., for the appellants; *James S. Gibson,* of Kansas City, of counsel.

*James F. Getty, J. H. Brady,* and *Charles E. Thompson,* all of Kansas Ctiy, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: May Lewis recovered judgment against the defendants in the sum of $5,000 for the death of her husband, Frank Lewis. Each of the defendants appeals.

1. At the close of the plaintiff's evidence, each defendant filed a demurrer thereto. The demurrers were overruled. Each defendant complains of that ruling. The evidence that had been introduced by the plaintiff was considered when the demurrers were passed on.

The following is a statement of the facts which the evidence of the plaintiff tended to show: Rosedale was a city of the second class. It was built between hills along Turkey Creek. Southwest boulevard runs through the city east and west. On that boulevard Ford F. Harvey and Robert J. Dunham, as receivers, operated an electric street railroad, consisting of two parallel tracks and trolley wires. Each of the trolley wires carried five hundred volts of electricity. The Frisco railroad ran through Rosedale from the southwest to the northeast, and crossed Southwest boulevard. On the east side of the Frisco railroad were the wires of the Western Union Telegraph Company, and on the west side were the wires of the Postal Telegraph Company. The telegraph wires crossed Southwest boulevard at the same place that the Frisco railroad crossed it. Along that boulevard were the wires of the Bell Telephone Company and of the Home Telephone Company. An electric-light wire, carrying 2,200 to 2,300 volts of electricity, ran along

Southwest boulevard. The wires of the Postal Telegraph Company were not insulated and were eighteen to twenty-four inches above the electric-light wires. If any wire of the several systems of wires should break, there was nothing to prevent the broken wire from coming in contact with the wires beneath it. On September 7, 1914, a heavy·rainfall occurred in Rosedale, and caused Turkey creek to rise very rapidly. By some means a wire of the Postal Telegraph Company broke and fell across the trolley wire at Southwest boulevard. At that place the ground was covered with flood water. A boy accidentally came in contact with the broken telegraph wire, and received a shock of electricity which knocked him down. Bystanders immediately cried out. Frank Lewis, the plaintiff's husband, saw the struggling boy and with a wooden-handled umbrella tried to detach the wire from him. The wire then came in contact with Lewis, and he received an electric shock. The boy and Lewis were killed.

The petition charged, among others, the following acts of negligence:

"That notwithstanding said facts, circumstances and conditions, defendant, The Postal Telegraph-Cable Company, carelessly and negligently failed to cable said wires at said place and carelessly and negligently failed and neglected to in any way insulate said wires or cover them with any material that is a nonconductor,of electricity. . . .

"That the defendant, City of Rosedale, carelessly and negligently permitted said defendant, The Postal Telegraph-Cable Company, to construct and maintain said poles and wires in said dangerous and unsafe condition.

.    .    .    .    .    .    .    . ·    .    .    .    .    .    .    .    .    .

"That defendants, Ford F. Harvey and Robert J. Dunham, as receivers of said Metropolitan Street Railway Company, knew all of the facts, conditions and circumstances hereinbefore mentioned or by the exercise of reasonable care and diligence should have known that said telegraph wire was apt to break and fall across their said trolley wires at said place in the manner and with the results aforesaid, and because of said facts, circumstances and conditions; it was the duty of said receivers to have placed, located, constructed and maintained over and above its said trolley wires at said point, 'guard wires' or covers of· some nature to prevent the wires suspended above said trolley wires from coming in contact with said trolley wires in the event the former should · break or fall."

One act of negligence charged concerned.the manner in which the Postal Telegraph Company had set certain of its

poles. The defendants argue that the latter act of negligence was not proved; that according to the allegations of the petition, the failure to insulate the wires, or 'otherwise protect them from coming in contact with each other, furnished the channel or means through which the negligence of the telegraph company, in setting its poles, operated to inflict the injury to Frank Lewis; and that because the plaintiff did not prove negligence in setting the poles, no cause of action was established. The construction placed by the defendants on the petition is not correct. Several acts of negligence were alleged, one of which has just been quoted. The evidence introduced to establish negligence of the defendants concerning the construction and maintenance of wires at the crossing of Southwest boulevard was sufficient to compel the submission of the cause to the jury for determination.

"Due care requires those using wires or conductors of electricity so to place and maintain them with reference to similar conducting agencies that dangerous contact is not probable; and where wires maintained concurrently by different parties are so erected or strung that one is likely to fall upon or come in contact with the other, thereby producing possible destructive consequences, either or both of them must make efforts to abate such dangerous condition, and if an injury occurs through a neglect of such duty, both are liable." (15 Cyc. 474.)

After declaring the same principle in very similar language, it is said in 9 R. C. L. 1215:

"Only in this way can the public receive that protection due it while exercising its rights in the highways in or over which electric wires are suspended, and it has accordingly often been. held that electric companies maintaining wires carrying heavy charges of electricity are under an obligation to maintain some kind of safeguard to prevent their contact with other wires. This is usually done by the erection of guards or other devices between wires heavily charged with electricity and those in proximity to them which are likely to be charged by contact."

These principles are sustained by *Biddle v. Power Co.*, 87 Kan. 604, 125 Pac. 51, and notes contained in the following publications: 100 Am. St. Rep. 533; 16 Ann. Cas. 1196; 1 British Rul. Cas. 803; 22 L. R. A., n. s., 1170, 1171; 52 L. R. A., n. s., 592; 10 N. C. C. A. 120.

2. Each of the defendants pleaded that 'Frank Lewis met his death by an "act of God." During the twenty-four hours preceding the death of Lewis, 7.03 inches of rain fell in Rose-

Lewis v. Street Railway Co.

dale, the greatest rainfall since July 1, 1888. Some of the evidence tended to show that flood water had previously been as high at this crossing as it was at the time of the accident; while other evidence tended to show that this was the greatest flood that had occurred within the memory of those who testified. This particular accident would not have happened if there had been no flood; neither would it have happened if the wires had been so arranged that they could not fall on each other. In 1 C. J. 1174, the writer says:

"The principle embodied in all of the definitions is that the act must be one occasioned exclusively by the violence of nature and all human agency is to be excluded from creating or entering into the cause of the mischief. When the effect, the cause of which is to be considered, is found to be in part the result of the participation of man, whether it be from active intervention or neglect, or failure to act, the whole occurrence is thereby humanized, as it were, and removed from the operation of the rules applicable to the acts of God. Thus if a party is in default for not performing a duty or not anticipating a danger, or where his own negligence has contributed as the proximate cause of the injury complained of, he can not avoid liability by claiming that it was caused by an act of God."

(See, also, The Law of Electricity, by Curtis, §§ 454, 455; 4 R. C. L. 715-717.)

"An 'act of God' as known in the law is an irresistible superhuman cause, such as no reasonable human foresight, prudence, diligence and care can anticipate and prevent." (*Garrett v. Beers*, 97 Kan. 255, Syl. ¶ 2, 155 Pac. 2.)

Was Frank Lewis killed by an "act of God"? Under the evidence, that question was for the jury to answer. It was correctly submitted to the jury by instructions that were in harmony with the quotation taken from 1 C. J. 1174, *supra*.

3. Complaint is made that an experienced telephone lineman was permitted to testify that a wire attached to several loose poles and one solid pole would break near the solid one, on a strain coming from the loose poles; and complaint is also made that the lineman was permitted to testify that a telegraph wire, breaking on a strain, may break in two places at the same time. That evidence was objected to on several grounds. The objection may have been good, but the evidence does not appear to have been prejudicial to either of the defendants.

4. One paragraph of one instruction requested by defendant, The Postal Telegraph Company, was as follows:

"The jury is instructed, that it was not the duty of the defendant, The Postal Telegraph-Cable Company, to use upon the wire that fell, any method of insulation not in common or customary use."

On the question embraced in the instruction requested the court instructed the jury as follows:

"Said defendants were bound to use the highest degree of. care commensurate with the danger, by the use of such appliances, devices or precautions as were practicable to prevent the contact of such uninsulated wire or wires with its own.

"It was the duty of said telegraph company to have exercised the highest degree of care, commensurate with the danger, by the use of such insulation or cable as you find were commonly used or practicable under 'the circumstances to prevent the contact of its telegraph wire with said trolley wires and becoming charged with a dangerous current of electricity therefrom, in the event it should break and fall."

The instructions given included what was requested, and were in harmony with the decisions of this court. (*Railway Co. v. Gilbert,* 70 Kan. 261, 78 Pac. 807; *Winegarner ¹v. Edison,* 83 Kan. 67, 73, 109 Pac. 778; *Snyder v. Light Co.,* 98 Kan. 157, 160, 157 Pac. 442, and cases there cited.)

5. Complaint is made of other instructions. They have been examined. No material error is found in them. A discussion of them will not be of any benefit to the parties to this action, nor to others.

The judgment is affirmed.